THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JERRY PANKEY, Defendant-Appellant.

Fourth District   No. 14631

Opinion filed April 7, 1978.

Markowitz, Lawrence, Jennings, Naylor & Mueller, of Bloomington (John P. Freese, of counsel), for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

A jury found defendant guilty of battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—3). The trial court fined defendant $300; no incarceration was imposed.

Defendant argues that the trial court erred in failing to give the jury a *Prim* instruction and that he was not convicted beyond a reasonable doubt.

Defendant's trial concluded on April 20, 1977, and the 12 jurors retired at 4:45 p.m. The judge excused the court reporter and the following facts have been stipulated by the parties under Supreme Court Rule 323(d). The jury was sent to dinner at 6:15 p.m. and returned to begin deliberating again at 7:45 p.m. At 9:05 p.m., the jury informed the court that it was deadlocked. Counsel for both sides met with the judge in his chambers. The judge indicated that he was going to advise the jury to continue to consider the case and that if, after trying once again a verdict could not be reached, they should so advise the judge. Attorneys for both defendant and the State agreed to this approach.

As the jury was entering the courtroom, the judge called the attorneys to the bench. He then showed them "A New Judge's Creed" (set out in the appendix) which the judge indicated he intended to read to the jury. Defense counsel objected on the basis of relevancy.

The judge proceeded to read the entire Creed to the jury and concluded by remarking "There is no such thing as a hung judge—you will now retire to determine your verdict." The jury reconvened at 9:15 p.m. and returned a verdict of guilty at 10:30 p.m. The jury was polled and each juror affirmed the guilty verdict.

The State argues that the defendant failed to object to the reading of the Creed and that any error has been waived. The stipulation in the record indicates that before the Creed was read to the jury defense counsel said: "I don't believe this is relevant to the case before the jury, your Honor, and I believe that the information presented therein [the Creed] is inappropriate to my client's case."

■■ No magic words such as "I object" are required. Only a reasonable indication of an objection is necessary to preserve error and it is evident to us that counsel's statement was an objection to the reading of the Creed. McCormick, Evidence §§115-116, at 247-49 (2d ed. 1972).

Defendant asserts that it was error for the trial court to read the Creed instead of giving the *Prim* instruction at such a crucial moment of the trial. The State contends that any error was waived because a *Prim* instruction was not tendered by defendant. Defendant, however, objected to the reading of the Creed and along with that issue the discussion of *Prim* is necessary.

In *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731, the Illinois Supreme Court, using its inherent power under section 16 of article VI of the 1970 Illinois Constitution, wrote an instruction for trial courts to read to deadlocked juries under appropriate circumstances. It reads:

> " 'The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.
>
> It is your duty, as jurors, to consult with one another and to

deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.'" 53 Ill. 2d 62, 75-76, 289 N.E.2d 601, 609.

The instruction was designed to avoid the coercion inherent in the traditional "Allen charge." (*Allen v. United States* (1896), 164 U.S. 492, 41 L. Ed. 528, 17 S. Ct. 154.) The *Allen* Charge had the effect of urging those members in the minority on the jury to re-evaluate their position, giving consideration to the fact that the majority of the jury who heard the same evidence took a different position. (*Prim.*) This aspect of the "Allen charge" has been referred to as the "heed the majority" message and has led to the name "dynamite charge."

The State argues that although the reading of the Creed was inappropriate because it did not conform to *Prim*, the Creed did not embody this "heed the majority" theme; therefore, the error, if any, was harmless because the reading of irrelevant material to the jury could not affect the verdict.

■■ In reviewing a deadlocked jury instruction, the test is whether the language used actually coerced or interfered with the deliberations of the jurors to the prejudice of the defendant. (*People v. Wilson* (1976), 37 Ill. App. 3d 560, 346 N.E.2d 161; see also *People v. Jackson* (1975), 26 Ill. App. 3d 618, 325 N.E.2d 450; *People v. Allen* (1977), 47 Ill. App. 3d 900, 365 N.E.2d 460.) However, it is extremely difficult for a reviewing court to determine the jury's subjective thoughts, so we must consider whether the comments imposed such confusion or pressure on the jury to reach a verdict that we are uncertain of its accuracy and integrity. *People v. Gainer* (1977), 19 Cal. 3d 835, 566 P.2d 997, 139 Cal. Rptr. 861.

■■ A trial judge has the duty to provide guidance to a jury that is not hopelessly deadlocked. (*Prim.*) Any non-IPI instruction given by the trial court is to be simple, brief, impartial, and free from argument. (Supreme Court Rule 451(a).) The "New Judge's Creed" in no way resembles the *Prim* instruction, and while we encourage all trial judges to aspire to its goals, we cannot say that it served as a substitute for *Prim*. The reading of the Creed did not provide any guidance or assistance to the jury, it only added confusion. It was error to read the Creed to the jury.

■■ However, we need not consider whether the reading of the Creed,

alone, was harmless error because prejudicial error resulted after the judge read the Creed and commented to the jury that there was no such thing as a "hung judge." Considering the context in which the statement was made, it was highly implicit that there should be no such thing as a hung jury. In *Jenkins v. United States* (1965), 380 U.S. 445, 446, 13 L. Ed. 2d 957, 958, 85 S. Ct. 1059, the trial judge made a similar statement to the jury when he said, "You have got to reach a decision in this case." (See also *United States ex rel. Tobe v. Bensinger* (7th Cir. 1974), 492 F.2d 232.) The possibility of a hung jury is an inevitable product of our unanimous verdict requirement and the jury cannot be compelled into reaching a verdict. *Gainer.*

In *Prim*, the supreme court directed all trial courts in Illinois to comply with section 5.4 of the Standards Relating to Trial by Jury promulgated by the American Bar Association Project on Minimum Standards for Criminal Justice. Section 5.4(a)(v) states:

"That no juror should surrender his honest conviction * * * for the mere purpose of returning a verdict."

■■ In the present case, the trial judge's remark had the effect of unduly pressuring those in the minority of the jury to "heed the majority" for the mere purpose of returning a verdict. Of course, any supplemental instruction requesting a deadlocked jury to reconvene will have some coercive aspects to it, but here the trial judge's remark to the jury indicated to those in the minority that they must abandon their position because a hung jury would not be acceptable. It was this element of the "Allen charge" that our supreme court found so repugnant and resolved by drafting the *Prim* instruction. The confusion caused by the reading of the Creed in conjunction with the coercion of the trial judge's comments amounted to prejudicial error.

■■ The polling of the jury did not cure the error or establish a lack of prejudice. *United States ex rel. Tobe v. Bensinger.*

■■ Defendant also argues that there is reasonable doubt of his guilt. Defendant admitted hitting the victim but he claimed self-defense. The victim claimed defendant was the aggressor. The credibility of the witnesses was for the jury to decide and we find nothing to indicate a reasonable doubt of defendant's guilt. *People v. Bradley* (1976), 43 Ill. App. 3d 463, 357 N.E.2d 696.

Reversed and remanded for a new trial.

Reversed and remanded.

REARDON, P. J., and MILLS, J., concur.

## APPENDIX
## A NEW JUDGE'S CREED

I hope I can run an efficient, orderly court—a court which not only dispenses impartial justice, but which by its very functioning impresses the participants with its fairness and objectivity.

I hope I shall always be convinced that the most important case is the one immediately before me and that, therefore, it is deserving of my undivided and alert attention.

I hope I am never too tired, too lazy or too confident of my own knowledge of the law to bother looking it up.

I hope I can curb my brilliant wit and sarcasm in court, remembering that a judge's words have great potential both for healing and hurting.

I hope that I shall never forget my first day in court when I have before me a brand new lawyer going through the agonies of his first day.

I know it is too much to hope that my decisions are never reversed, so when they are, I hope I can remember that after all, those fellows up there have to earn a living too, and they might just possibly be a little wiser than I.

I hope that in sentencing a man convicted of crime I shall always be mindful of the public interest, but never lose respect for the awesome power over human life which is the responsibility of the judge.

I hope I shall have the strength to make the hard decisions and the composure to stick to them.

I hope that I shall never be so certain of my own rectitude and impartiality that I cease to search within myself for possible bias or prejudgment.

I pray that when my judicial days are over, whether tomorrow morning or thirty years from now, it can be said of my service that it was sound and true, that it was a credit to the judicial system of the United States, and that in some small but measurable way I was able to contribute to the continuing betterment of human life and justice.

—ALBERT J. ENGEL, excerpt from remarks on his induction as a judge of the United States District Court for the Western District of Michigan, at Grant Rapids, on January 29, 1971.