THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVEN MARSHALL, Defendant-Appellant.

Fourth District   No. 16726

Opinion filed October 29, 1981.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Edward Litak, State's Attorney, of Danville (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant, Steven Marshall, appeals his conviction and sentence for delivery of a controlled substance containing less than 30 grams of cocaine (Ill. Rev. Stat. 1979, ch. 56½, par. 1401) entered on April 22, 1980, after a jury trial in the circuit court of Vermilion County. He was sentenced to 2½ years' probation conditioned upon 18 months' periodic imprisonment and fined $2,000. He maintains: (1) the State failed to rebut

his affirmative defense of entrapment by proof beyond a reasonable doubt; (2) the court abused its discretion in denying his motion for continuance to obtain substitute counsel; (3) if his conviction stands, the classification of the offense should be reduced from a Class 2 to a Class 3 felony; and (4) the imposition of a fine was an abuse of discretion.

As defendant testified at trial admitting his participation in various deliveries of cocaine but claiming entrapment, the occurrence testimony was similar in many respects. It was undisputed that defendant, an informer named Marcel Cleave, and two law enforcement officers named Carey Spicer and Frank Sporcich met on February 27, 1979, and March 1, 1979, and that defendant, Cleave and Spicer met on March 8, 1979. At the first meeting, defendant gave Sporcich two packets of cocaine from a bottle and Sporcich gave defendant $35. On March 1, 1979, defendant delivered cocaine to both Spicer and Sporcich in exchange for money. On the last occasion defendant delivered cocaine to Sporcich in exchange for · money. The State's evidence showed that during a four-month period Cleave had arranged some 40 contraband sales for the State and had been paid approximately $1,300 in compensation. In December 1979, law enforcement officers had placed Cleave on an airplane bound for California. He was not called as a witness at trial.

Defendant maintains that he participated only at Cleave's urging and in support testified to the following sequence of events. On February 27, 1979, while defendant was shooting pool in a Danville tavern, Cleave approached defendant, stated he, Cleave, had a quantity of cocaine and requested defendant sell it for Cleave to some of Cleave's friends who were junkies and needed it. Cleave further explained that he could not sell the cocaine himself because he owed the individuals a sum of money and thus, they would not want to pay him for the cocaine. Although defendant had known Cleave since childhood and trusted him, defendant refused to perfo*m the aforesaid favor. However, Cleave began "begging and plead·ᵍ" with defendant, stating that he needed the money. Defendant, know· ₅ Cleave was married and had several children, finally agreed to make · .e sale. On March 1, 1979, Marcel Cleave implored him to make furth. sales to Cleave's friends, stating "this would be the last time." Again n March 8, 1979, he agreed to make a further sale only after being begge. to do so by Cleave. On all occasions Cleave supplied him with the cocaiⁱ .

The test for entrapment generally followed in Illinois is that derived from . 1e majority opinion in two leading cases of the United States Supre.1e Court on the subject. (*Sorrells v. United States* (1932), 287 U.S. 435, 7 L. Ed. 413, 53 S. Ct. 210; *Sherman v. United States* (1958), 356 U.S. 369, 2 ⌐. Ed. 2d 848, 78 S. Ct. 819.) Entrapment exists "when the criminal desigr. originates with the officials of the Government and they implant in

the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." (*Sorrells v. United States* (1932), 287 U.S. 435, 442, 77 L. Ed. 413, 417, 53 S. Ct. 210, 212-13.) Thus, for entrapment to be established (1) the government must, for the purpose of obtaining evidence, originate the crime and induce the defendant to commit it; and (2) the defendant must be an "innocent" person who would not have committed a crime of this sort had he not been thus induced (he need not be innocent in the sense that he has no prior criminal record). LaFave and Scott, Criminal Law §48, at 371 (3d ed. 1977).

■■ Under defendant's version of the facts, all of the cocaine delivered was supplied by Cleave, the State's informer. The State's witnesses did not so state but were not called in rebuttal to counter this testimony. In any event, in *People v. Cross* (1979), 77 Ill. 2d 396, 396 N.E.2d 812, the court refuted a claim that under *People v. Strong* (1961), 21 Ill. 2d 320, 172 N.E.2d 765, and *People v. Dollen* (1972), 53 Ill. 2d 280, 290 N.E.2d 879, the State's furnishing of the controlled substance indicated absolutely that the idea for the offense arose from the State and the defendant had no predisposition to commit the offense. The court stated that in light of the ever-growing drug problem, government action in infiltrating drug rings should not be criticized so strongly, and that the court should not foreclose the possibility that a conviction of a predisposed individual could be sustained even though the government did furnish the controlled substance. The State's furnishing of all the cocaine delivered does not, of itself, require us to reverse.

The likelihood that Cleave's coaxing was the predominant cause of defendant's conduct was lessened a great deal by the undisputed evidence that defendant made deliveries on three separate occasions several days apart. While a single delivery could well have resulted from coaxing, the multiple acts would indicate a desire to become involved in the trade and a deliberate intent to do so. Further evidence of defendant's predisposition to do so came from Spicer's testimony that: (1) after the first delivery on February 27, 1979, defendant told Spicer if he were interested in more cocaine, to contact Cleave, and (2) after the March 1, 1979, deliveries, defendant told Spicer defendant would have more cocaine for him later. Although defendant denied making at least one of the statements, the jury could have believed Spicer.

Although most of defendant's testimony was not directly disputed, he testified that after each sale, he gave back to Cleave the objects which contained the controlled substances while the officers testified that defendant did not do so. Defendant's testimony that on March 1, 1979, he met Cleave at a tavern where they talked for five or 10 minutes before going to meet Spicer was inconsistent with Spicer's testimony that he met

Cleave who was then gone for five minutes before returning with defendant. If the jury believed the officers rather than defendant, the jury could have taken the discrepancy in the testimony in consideration in determining the weight to be given to defendant's testimony.

■■ The evidence was sufficient for the jury properly to have found the entrapment defense to have been disproved beyond a reasonable doubt. Thus, the evidence was sufficient to support the verdict.

A chain of events relate to the court's denial of defendant's request for a continuance to retain private counsel. Defendant was indicted on May 21, 1979, the public defender was to represent him, and the case was set for trial in October. On the day of trial, attorney Richard Doyle appeared before the court and stated defendant had contacted him the night before expressing dissatisfaction with the public defender's preparation. A request for a continuance so that Mr. Doyle could prepare for trial and represent defendant was made. The court denied the request as being untimely. The case went to trial with the public defender representing defendant. The jury returned a verdict finding defendant guilty of several counts, but the trial court granted defendant a new trial. Retrial was originally set for March 5, 1980, and reset for March 11, 1980. On March 4, 1980, attorney Doyle entered his appearance for defendant and filed motions for a transcript of the proceedings at the original trial and a continuance of the new trial. At a hearing on March 7, 1980, the court denied the motion for continuance and refused Mr. Doyle permission to enter his appearance at that date. Because of defendant's illness, the case was later continued until April 21, 1980, when a trial occurred at which defendant was represented by the public defender.

Defendant maintains that the court's ruling on March 7, 1980, deprived him of his right to counsel of his choice as guaranteed by the combined effect of the sixth and fourteenth amendments as interpreted by *People v. Green* (1969), 42 Ill. 2d 555, 248 N.E.2d 116, and *People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14. In *Green*, an attorney hired by a church group to represent the defendant failed to appear for a trial. The supreme court held that the trial court violated the defendant's right to counsel by forcing him to go to trial immediately and with an unprepared public defender as counsel. The court indicated that an accused's right to counsel of his own choice did not extend to that which would bring about an " 'indefinite thwarting of the administration of justice.' " (42 Ill. 2d 555, 557, 248 N.E.2d 116.) The trial court has been deemed to have less discretion in denying a continuance for preparation by new counsel when that counsel has filed an appearance (*People v. Payne* (1970), 46 Ill. 2d 585, 264 N.E.2d 167) than when no showing has been made as to who the new counsel might be. *People v. MacArthur* (1971), 2 Ill. App. 3d 1077, 278 N.E.2d 530.

■■ This defendant had attempted to have Mr. Doyle substituted as counsel on the day of the first trial because of dissatisfaction with court-appointed counsel. A new trial was granted on December 11, 1979, but defendant did not obtain new counsel until March 4, 1980, about one week before the date for which the new trial had been set. Again the defendant claimed dissatisfaction with the preparation of court-appointed counsel. On March 20, 1980, the case was continued until April 14, 1980, because of defendant's illness. Had defendant wished to proceed with new counsel, a sufficient period then existed for new counsel to have entered the case with time to prepare and meet the new trial date. However, no attempt was made to do so. This record fully supports the trial court's determination that the tardy attempts to substitute counsel were made for delay. Defendant failed to exercise the required diligence. No error occurred.

Next, defendant argues his convictions should be reduced from Class 2 felonies to Class 3 felonies pursuant to this court's decision in *People v. McCarty* (1981), 93 Ill. App. 3d 898, 418 N.E.2d 26. However, the Supreme Court of Illinois recently reversed that decision (*People v. McCarty* (1981), 86 Ill. 2d 247), and therefore his convictions should stand.

Defendant finally asserts the trial court abused its discretion when it imposed a fine of $2,000 in addition to a term of periodic imprisonment, all as a condition of his probation. Section 5—9—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—9—1) provides for the imposition of fines and states they may be imposed in addition to sentences of probation or periodic imprisonment. However, section 5—9—1(c)(1) (Ill. Rev. Stat. 1979, ch. 38, par. 1005—9—1(c)(1)) requires the court, before imposing a fine, to consider "the financial resources and future ability" to pay the fine, and the Council Commentary to the section indicates that "fines are purposely discouraged by the Code unless some affirmative reason indicates that a fine is peculiarly appropriate" (Ill. Ann. Stat., ch. 38, par. 1005—9—1, Council Commentary, at 520 (Smith-Hurd 1973)). Defendant maintains the trial court failed to consider his ability to pay the fine and no showing was made that the fine was "peculiarly appropriate."

In *People v. Bishop* (1980), 81 Ill. App. 3d 521, 524, 401 N.E.2d 648, 650, the court stated that the trial judge need not specifically state that the defendant was determined to have the financial resources and future ability to pay the fine. That finding would be implicit in the imposition of a fine where the trial judge was aware of facts in the record which would support such a finding.

■■ Such was the case here. The judge considered the fact that defendant had a good job and no dependents in sentencing him to 2½ years'

probation with 18 months' periodic imprisonment. In view of the severity of conduct for which the sentence was imposed and the otherwise relatively mild punishment, it would appear the fine was "peculiarly appropriate."

For the reasons stated, we affirm.

Affirmed.

TRAPP, P. J., and WEBBER, J., concur.