THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCUS GREGORY, Defendant-Appellant.

Second District   No. 2—88—0024

Opinion filed June 14, 1989.

REINHARD, J., dissenting.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Robert Agostinelli and Joseph N. Ehmann, both of State Appellate Defender's Office, of Ottawa, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Marcus Gregory, was convicted by a jury of burglary and criminal trespass to a motor vehicle. (Ill. Rev. Stat. 1987, ch. 38, pars. 19—1(a), 21—2.) The court vacated the criminal trespass conviction as a lesser included offense of burglary and sentenced the defendant to six years' imprisonment in the Department of Corrections.

Defendant contends his burglary conviction must be reversed and the cause remanded for reinstatement of and sentencing on the criminal trespass conviction because the jury's verdict finding him guilty of burglary was coerced.

Detailed recitation of the facts of the offenses is not required. Suffice it to say the defendant, a recently terminated Sears employee, was discovered on September 19, 1987, inside a semi-truck trailer parked in the Sears Roebuck loading area. He had a key for the trailer padlock, which was discovered open, and many of the boxes inside the trailer had been torn or cut open. The Sears security manager found a flashlight and glove in the trailer which he could identify as belonging to the defendant, and also found a sharpened stick stuck into one of the boxes.

Slightly more than two hours after the jury retired to deliberate, the following proceedings took place:

"(The following proceedings were had in open court outside the presence and hearing of the jury.)

THE COURT: The jury has sent a question.

THE BAILIFF: They have got a verdict now.

MR. SMITH [Assistant State's Attorney]: What is the question?

THE COURT: 'If the record is split on one charge, how do we fill out the guilty forms: guilty; not guilty? Both forms or one?' Did they now reach a verdict?

MR. SMITH: That's what Willis was saying.

THE COURT: Have they now reached a verdict? Did you say they have reached a verdict?

THE BAILIFF: That's what they told me.

THE COURT: Okay. Then we don't have to answer the question.

(The following proceedings were had in open court in the presence and hearing of the jury.)

THE COURT: Ladies and Gentlemen of the Jury, have we reached a verdict?

THE FOREMAN: Yes, your Honor, we have.

THE COURT: Do you want to hand the verdict forms to Mr. Payne, please? All of them.

THE FOREMAN: (Complying.)

THE COURT: (Reading verdict.) 'We, the Jury, find the Defendant Marcus Gregory guilty of the offense of burglary.' And, 'We, the Jury, find the Defendant Marcus Gregory guilty of the offense of criminal trespass to motor vehicle.'

THE FOREMAN: No, I don't think so, your Honor. You better look at the papers correctly.

UNIDENTIFIED JUROR: Look at the burglary again.

THE COURT: (Reading documents.) 'We, the Jury, find the Defendant Marcus Gregory guilty of the offense of burglary.'

UNIDENTIFIED JUROR: There was an additional form there. There was a split.

THE COURT: Oh, Lord.

THE FOREMAN: That was the question that we had earlier about the—

THE COURT: Okay. Do you want to come up here?

(Whereupon the following proceedings were had at the bench out of the hearing of the jury.)

THE COURT: They're right. We have twelve signatures on the criminal trespass to motor vehicle. We have ten signatures and two signatures on the—

[MR. SMITH]: They have got to go back and deliberate then.

THE COURT: Pardon?

[MR. SMITH]: They have got to go back and deliberate.

[MS. CECKOWSKI] (Assistant Public Defender): I agree that we don't have any choice. I ask that they be hung as far as—

(Whereupon the following proceedings were had in open court in the presence and hearing of the jury.)

THE COURT: Ladies and Gentlemen of the Jury, as the instructions I have previously given you indicate, your verdict upon any charge must be unanimous. So, with that I'm going to return these forms, and ask you to continue your deliberations, and with that I'd ask you to retire again.

The record should reflect that when I first looked at the verdict form I saw what looked like enough signatures on the guilty verdict to the burglary, and then I realized there was only ten on that and two on the not guilty verdict."

Within the hour, the jury was brought back into open court and the verdict forms finding the defendant guilty of burglary and criminal trespass to a vehicle were read by the court. The two signatures on the "not guilty" of burglary verdict form were scratched off and there were 12 signatures on the "guilty" of burglary verdict form. The jury was polled at the defendant's request and judgments entered on the verdicts. Defendant's timely filed motion for new trial, which was denied, included as errors the court's returning the jury to continue deliberation over his request that it be declared a hung jury and the court's failure to declare a mistrial when the jury returned the nonunanimous verdict.

The defendant argues the manner in which the trial court caused the jury to continue its deliberations amounted to impermissible coercion. As a coerced verdict, he contends his conviction of burglary should be reversed outright because he was found guilty of the lesser-included offense of criminal trespass.

The State argues the defendant has waived the issue. Alternatively, the State contends the judge properly exercised his discretion in refusing to declare a mistrial, reiterating his previous instruction and ordering the jury back for further deliberations. It asserts it is the duty of a trial judge to review the verdict and determine if it is proper in form and substance and to provide guidance to a jury that is not hopelessly deadlocked.

■■ It is well settled that the failure to raise an issue both at trial and in a post-trial motion waives the issue on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176.) "No magic words such as 'I object' are required," however (*People v. Pankey* (1978) 58 Ill. App. 3d 924, 926), and the right to a fair trial by an impartial jury is considered so basic as to warrant application of the plain-error rule (*People v. Palmer* (1984), 125 Ill. App. 3d 703, 712). The defendant here requested the jury be declared hung and had no reasonable opportunity to speak further before being cut off by the court's instruction to the jury. His subsequent post-trial motion clearly presented the issue. We conclude no waiver occurred.

■■ "The integrity of the jury's verdict must be protected from coercion, duress or influence." (*People v. Patten* (1982), 105 Ill. App. 3d 892, 894.) Thus, a court's judgment must be reversed and the cause remanded when, taken in context and considering all the cir-

cumstances of the case, its supplemental instruction to a jury has the effect of coercing jurors into surrendering views conscientiously held. (*Jenkins v. United States* (1965), 380 U.S. 445, 13 L. Ed. 2d 957, 85 S. Ct. 1059.) "A verdict hastened by the action of the judge, however worthy the motive, cannot be the result of that deliberation which the law guarantees." (*People v. Golub* (1929), 333 Ill. 554, 561.) The possibility of a hung jury is an inevitable by-product of a unanimous-verdict requirement, and the jury cannot be compelled to reach a verdict in all instances. *Pankey*, 58 Ill. App. 3d at 926.

■ Nevertheless, a trial judge has the duty to provide guidance to a jury that is not hopelessly deadlocked. (*People v. Prim* (1972), 53 Ill. 2d 62, 64.) The Illinois Supreme Court has directed that a trial court faced with a deadlocked jury is to comply with the standards suggested in section 5.4 of Standards Relating to Trial by Jury of the American Bar Association Project on Minimum Standards for Criminal Justice. (*Prim*, 53 Ill. 2d at 74-76.) The mere failure to give a *Prim* instruction to a deadlocked jury is not reversible error, however. The directive to the trial courts and the instruction framed in *Prim* were aimed primarily at eliminating supplemental instructions to the jurors to "heed the majority" as a means of securing a verdict. (*Palmer*, 125 Ill. App. 3d at 712.) A "heed the majority" instruction, also known as a "dynamite" or "Allen" charge (*Allen v. United States* (1896), 164 U.S. 492, 41 L. Ed. 528, 17 S. Ct. 154), has the effect of urging those members of the jury who are in the minority to reevaluate their position. (*People v. Robertson* (1981), 92 Ill. App. 3d 806, 808.) Such instructions have been soundly discredited, are discouraged and have been prohibited in certain jurisdictions. (*Prim*, 53 Ill. 2d at 72-73.) A court's instruction to a jury to continue deliberating should be simple, neutral, and not coercive. (*People v. Campbell* (1987), 163 Ill. App. 3d 1023, 1032.) " 'In dealing with what appears to be a deadlocked jury, the trial judge should avoid instructions which imply that a majority view is the correct one.' " *Prim*, 53 Ill. 2d at 76, citing American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge §5.12(b) (Tent. Draft 1972).

■ In reviewing the propriety of a deadlocked-jury instruction, the test is whether under the circumstances the language used actually coerced or interfered with the deliberations of the jurors to the prejudice of the defendant. (*People v. Craddock* (1987), 163 Ill. App. 3d 1039, 1045; *Palmer*, 125 Ill. App. 3d at 713; *Pankey*, 58 Ill. App. 3d at 927.) Because a determination of whether something has actually had a coercive effect or not requires knowledge of the jurors' sub-

jective thoughts, which this court has no way of obtaining, the test effectively turns on a consideration of whether the court's instruction imposed such confusion or pressure on the jury to reach a verdict that the accuracy and integrity of the verdict returned becomes uncertain. (*People v. Branch* (1984), 123 Ill. App. 3d 245, 251; *Pankey*, 58 Ill. App. 3d at 927.) The length of the jury's deliberations subsequent to the court's instruction, standing alone, is not conclusive as to whether the verdict was the result of the pressure exerted by the court's instruction. (*Branch*, 123 Ill. App. 3d at 252.) Rather, the determination must be made based on the totality of the circumstances. *Lowenfield v. Phelps* (1988), 484 U.S. 231, 237, 98 L. Ed. 2d 568, 576-77, 108 S. Ct. 546, 550; *Branch*, 123 Ill. App. 3d at 251.

The defendant does not question that it was within the trial judge's discretion to grant a mistrial or not, or argue that he should have answered the jury's question as to how to record its split vote. The record shows the judge had no opportunity to answer the question before he was informed the jury had reached a verdict. The trial judge also did not inquire improperly into the numerical division of the jury; he simply could not avoid knowing it. As shown above, the judge incorrectly announced the jury found the defendant guilty of burglary. The jury foreman told the judge he'd "better look at the papers correctly," and an unidentified juror drew the judge's attention to the burglary verdict in particular. The judge then announced again that the jury found the defendant guilty of burglary, and the unidentified juror stated, "There was an additional form there. There was a split." The judge then exclaimed, "Oh, Lord."

Witnessing this scene, the jury could well have concluded the judge's inattention to the detail of the verdict forms was born of his expectation that the jury would return such guilty verdicts. Even after his attention specifically was drawn to the burglary verdict forms, he failed to observe the split, thus reinforcing the notion the guilty verdict was expected. We can only surmise with what inflection the judge exclaimed "Oh, Lord" when the split was pointed out to him, but it must have conveyed to the jury the impression something was awry. After a perfunctory sidebar with both counsel, the judge reminded the jury his previous instructions were that its verdict upon any charge *"must be unanimous."* The judge then returned the *used* verdict forms to the jury and asked it to continue its deliberations.

The State's position is that the court's actions were not error since a verdict is not final until the court reviews and accepts it, and the court may require "emendations" (corrections) to the verdict so that it may truly reflect the finding of the jury. None of the cases

cited by the State are in point, however, and the court in *People v. Katalinich* (1987), 153 Ill. App. 3d 778, 782, cautions that such "emendations" should be limited to the correction of "technical" errors.

In *People v. Wilson* (1972), 51 Ill. 2d 302, cited by the State, the defendant was charged with three offenses and the jury given a set of verdict forms for each offense. When the jury returned only one signed verdict (the record did not reflect which one), the court immediately informed the jury that it should have returned a verdict of either guilty or not guilty on each of the three counts and ordered it back to the jury room to affix signatures to the unsigned verdicts. Relying on *People v. Arnett* (1951), 408 Ill. 164, the court found it was not error for the court to have required the jury to retire to amend its verdict by putting it in proper form.

In *Arnett*, rather than signing the separate verdict form as instructed, the jury signed the instruction containing the forms of verdict given them by the court. The instruction sheet contained a form for a verdict of guilty and likewise for a verdict of not guilty. When questioned, the jurors agreed they had found the defendant guilty. The jury retired again and returned its verdict of guilty on a separate sheet of paper as previously instructed.

In *People v. Almo* (1985), 108 Ill. 2d 54, also cited by the State, the jury returned guilty verdicts against the defendant for murder, voluntary manslaughter and armed violence. Realizing the verdicts for murder and voluntary manslaughter were inconsistent, the court changed a word in a previously given instruction, gave the jury new verdict forms for murder and voluntary manslaughter and charged it to continue to deliberate. The jury then returned only a verdict of guilty of murder; no verdict was returned for voluntary manslaughter. The trial court's actions were approved against the defendant's contentions on appeal the trial was over the moment the inconsistent verdict forms were returned and that a verdict of guilty of murder cannot be based upon the mental state of a genuine but unreasonable belief of self-defense. The State also relies upon *People v. Rollins* (1982), 108 Ill. App. 3d 480 (it is not inherently coercive to instruct the jury that it must return a verdict on all counts and to order them back for further deliberations), and *People v. Thurman* (1983), 120 Ill. App. 3d 975 (proper to inform the jury that verdicts must be returned on all charges and send them back for further deliberations; the trial judge may give brief explanatory remarks concerning the form of the verdict).

Unlike the unsigned verdict forms and inconsistent verdicts re-

turned in the cases above, there was a split vote here on the burglary offense; the jury had not yet reached a "verdict" on the offense, and it had not neglected to sign a verdict form. As in *People v. Santiago* (1982), 108 Ill. App. 3d 787, cited by the defendant, the court here was aware the jury was split in favor of a guilty verdict. Unlike *Santiago*, however, it discovered this information inadvertently rather than through persistent questioning and forced, continual deliberations found to be reversible error in *Santiago*. Reversible error was also found in *People v. Katalinich* (1987), 153 Ill. App. 3d 778, where the court's supplemental instruction to the jury did not meet the standard approved in *Prim*. The judge told the jury—which had returned verdicts of not guilty of one count of aggravated battery and one count of battery and guilty verdicts as to two counts of battery, but was silent as to the two remaining counts of aggravated battery— "[Y]ou must *** return two more verdicts. *** [Y]ou must find the defendant either guilty or not guilty [as to the two remaining counts]." (*Katalinich*, 153 Ill. App. 3d at 779.) Also, in *People v. Robertson* (1981), 92 Ill. App. 3d 806, 809, the judge's statement to the jury, "[y]ou can't be deadlocked," was found tantamount to a "heed the majority" charge and, thus, reversible error.

Although factually distinguishable from *Santiago*, *Katalinich* and *Robertson*, the circumstances of the court's supplemental charge to the jury here had the same "heed the majority" effect. Rather than providing the apparently deadlocked jury with new verdict forms, the court returned the already partially signed verdict forms to the jury, instructed it that its verdict upon any charge *must be unanimous* and ordered it back to the jury room. The court further noted for the record that it had thought at first that there were "enough" signatures on the guilty verdict but there were "only" 10 and there were two on the not guilty verdict. The judge's failure to provide the jury with fresh, unsigned verdict forms conveyed to the jury the unmistakable impression he believed it would be able to add "enough" signatures to the guilty verdict form to make up for the deficit in what otherwise would have been the required "unanimous" verdict. The jury did not disappoint the judge. In less than an hour's time, the two signatures on the "not guilty" of burglary verdict form were scratched out and appeared on the last two signature lines of the "guilty" of burglary verdict form.

Under strikingly similar circumstances, the procedure used by the trial court in the instant cause was found to constitute reversible error in *United States v. Arpan* (8th Cir. 1988), 861 F.2d 1073, a case which we granted defendant leave to cite as additional authority. In

*Arpan,* the jury also inquired how it should record a split decision, and the court responded:

> "As to any count in the indictment, you *may not return a verdict* unless your verdict as to that *count is unanimous.*" (Emphasis in original.) (*Arpan,* 861 F.2d at 1077.)

The jury returned guilty verdicts on four of nine counts of embezzlement and theft. The circuit court of appeals found the trial court's instruction given in response to the jury's question effectively denied it the option of a hung verdict and, as such, it was reversible error.

Although the court here did not have the opportunity to respond to the jury's question concerning how it should record a split verdict, the court's instruction to it upon learning of the split vote had essentially the same effect by not accepting the split, advising it that its "verdict upon any charge must be unanimous" and sending it back with used verdict forms to deliberate further.

Acknowledging the dissent in *Arpan* (*Arpan,* 861 F.2d at 1078 (Beam, C.J., dissenting)), we point out the jury here, unlike the jury in *Arpan,* was not instructed that *"In order to return a verdict,* it is necessary that each juror agree thereto." (Emphasis added.) Rather, it was instructed in pertinent part simply that "Your agreement on a verdict must be unanimous." (Illinois Pattern Jury Instructions, Criminal, No. 26.01 (2d ed. 1981) (hereinafter IPI Criminal 2d).) The point of the dissent in *Arpan* was that the various notes from the jury there dealt with how to use the verdict form to return a verdict with less than unanimous support for the outcome which, per the instruction, could not be done. Thus, the dissent concluded, the court's responses were to the point, accurate and proper. In contrast in the instant cause, there was nothing in the court's original or supplemental instruction to the jury which suggested a hung verdict as a possibility. Notably, the *Prim* instruction tells the jury that "[i]*n order to return a verdict,* it is necessary that each juror agree thereto. Your verdict must be unanimous." (Emphasis added.) IPI Criminal 2d No. 28.01 (Supp. 1989); *Prim,* 53 Ill. 2d at 75.

■ In light of all the circumstances, we find the court's instruction to the jury imposed such pressure on it as to render the accuracy and integrity of its verdict uncertain.

Having concluded thusly, we nevertheless reject defendant's further contention his conviction of burglary must be reversed outright and the cause remanded only for reinstatement of his conviction on the lesser included offense of trespass to a vehicle and for sentencing thereon. Defendant relies on *People v. Katalinich* (1987), 153 Ill. App. 3d 778, and *People v. Hoffer* (1985), 106 Ill. 2d 186, 198, in support of

his contention that where there is a conviction for an included offense and a coerced guilty verdict on a greater offense, the conviction for the greater offense must be reversed and sentence imposed on the lesser offense.

In *Katalinich*, however, the jury was initially silent on the two aggravated battery charges, and the court did not inquire of the jury as to the reason for its silence. The silence could have signified an intent to acquit, a jury compromise, a hung jury, or an exercise of lenity. (*Katalinich*, 153 Ill. App. 3d at 783.) Because it found the jury's subsequent verdicts on the two aggravated battery charges were coerced, and in view of its silence on those two counts in its initial verdicts, the court reversed outright with no remand for retrial. It believed the jury's initial verdicts impliedly acquitted the defendant of the aggravated battery charges.

■ *Hoffer* held that section 3—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 3—4(a) ("conviction of an included offense is an acquittal of the offense charged")) applies only when the jury returns a guilty verdict on a lesser offense *and is silent as to the charged offense. Hoffer*, 106 Ill. 2d at 198.

■ Here, the jury initially returned a split vote; it was not silent as to the charged offense. Had a hung jury been declared as the defendant requested, retrial would not have been barred under section 3—4. The jury's subsequent verdict, albeit a coerced one, was that the defendant was guilty of the charged offense. As a coerced verdict, it was not "the result of that deliberation which the law guarantees" (*Golub*, 333 Ill. at 561), and the defendant is entitled to a new trial.

Accordingly, the defendant's burglary conviction is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

INGLIS, J., concurs.

JUSTICE REINHARD, dissenting:

Because I conclude that the brief remarks of the trial judge could not be understood by the jury as directing it to return a verdict of guilty on the burglary charge, I respectfully dissent.

The fundamental difference I have with the majority's rationale and the cases relied on is the treatment of the issue in the context of an "apparently deadlocked jury." The record reveals that the jury returned the verdicts in open court approximately two hours after submission of the case to it. While the note sent to the court and the re-

turning of both the guilty verdict signed by 10 jurors and the not guilty verdict signed by two jurors on the charge of burglary obviously indicates the jury was split, there is no indication the situation was in fact a true deadlock. Thus, it is in this circumstance, upon the surprising discovery of the split verdict, that the trial judge stated to the jury that "as the instructions I have previously given you indicate, your verdict upon any charge must be unanimous. So, with that I'm going to return these forms, and ask you to continue your deliberations, and with that I'd ask you to retire again." Within an hour of further deliberation, a unanimous verdict of guilty of burglary was returned.

It is apparent from the record that the trial judge did not view the jury as deadlocked, nor is there such showing by any of the comments of the jurors. (*Cf. People v. Buckner* (1984), 121 Ill. App. 3d 391, 400, 459 N.E.2d 1102.) It is primarily the function of the trial judge to determine whether a jury is deadlocked and in what manner to proceed. (See *People v. Cowan* (1985), 105 Ill. 2d 324, 327-29, 473 N.E.2d 1307.) Thus, in informing the jurors that their verdict must be unanimous and directing them to continue their deliberations, the trial judge was not confronting a deadlocked jury situation, but was only addressing their split verdict revealed to him after only two hours of deliberations. In this light, he was not telling the jurors that they *must* return a verdict, but only that their verdict must be unanimous, as they had been previously instructed. Under these circumstances, his action and comments in returning the jury for further deliberation was the practical way to proceed and was not error.

While I agree with the majority that new verdict forms should have been given to the jury, I disagree that this procedure, as the majority states, "conveyed to the jury the unmistakable impression he believed it [the jury] would be able to add 'enough' signatures to the guilty verdict form to make up for the deficit in what otherwise would have been the required 'unanimous' verdict." (184 Ill. App. 3d at 684.) The jury did deliberate about another hour before returning the jury verdict, indicating the two jurors were not compelled in their verdict in direct response to the judge's comments. A judge's instruction to continue deliberations after an unsolicited disclosure of the split in the verdict does not imply approval, disapproval or anything else, nor does it suggest that minority jurors change their stance. (*People v. Farella* (1979), 79 Ill. App. 3d 440, 445-46, 398 N.E.2d 615.) Fairly considering this record, it cannot be concluded that the trial judge either intended or conveyed to the jurors an improper direction to return a guilty verdict.

For these reasons I dissent and would affirm the judgment below.