THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v.
NESTOR FERRO, Petitioner-Appellant.

Second District Nos. 2—89—0287, 2—89—0344 cons.

Opinion filed March 22, 1990.—Rehearing denied April 19, 1990.

Julius Lucius Echeles, of Chicago, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Nestor Ferro, was found guilty in a jury trial in the circuit court of Lake County of one count of unlawful delivery of over 30 grams of a substance containing cocaine (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)) and was sentenced to a 30-year term of imprisonment. On his direct appeal of that conviction to the appellate court in which the single issue of the trial court's abuse of discretion in imposing a 30-year sentence was raised, this court affirmed the circuit court in *People v. Ferro* (1988), 168 Ill. App. 3d 1162, 539 N.E.2d 926 (unpublished order under Supreme Court Rule 23).

On September 7, 1988, defendant, through his present counsel, filed a petition pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*) stating that he was deprived of the effective assistance of counsel on his direct appeal, because his appellate counsel, who was also trial counsel, failed to raise, *inter alia*, the following issues in that appeal which had been raised at trial: (1) that he was entrapped as a matter of law; (2) that the jury was coerced into reaching a verdict by the trial judge's comments and the failure to give the *Prim* instruction; and (3) that due process of law was denied because he was interviewed in jail after counsel was appointed and because he cooperated with the police in this interview in exchange for a lesser sentence which was not ultimately given. Following the filing of the State's response to the petition and argument of counsel on the contents of the petition, the circuit court denied the petition on all grounds raised except for the jury coercion issue and, as to that issue, allowed a new appeal because of appellate counsel's incompetency for failure to raise the issue in the direct appeal. The circuit court denied, however, defendant's request for a new trial, stating that it was not finding the original trial court's actions were reversible error.

Defendant appeals in No. 2—89—0287 from the circuit court's denial of the two grounds in his post-conviction petition, alleging that his appellate counsel was incompetent for failure to raise on appeal that entrapment was established as a matter of law and that he was denied due process as alleged in the petition. He seeks reversal of his conviction or remand with appropriate instructions. As to the jury coercion issue on which he was granted another appeal for appellate counsel's failure to raise the issue on direct appeal, he asks that he be

given a new trial, as requested below, or that this court "grant the required relief via whatever means the Court determines is appropriate." The State separately appeals in No. 2—89—0344 from that part of the circuit court's order granting a new appeal on the jury coercion issue contending that the circuit court was without statutory authority in a post-conviction proceeding to order a new appeal as post-conviction relief. The cases have been consolidated by this court.

Defendant was charged with two counts of unlawful delivery of a controlled substance based on sales to Mike Maley, an undercover State Police officer, on November 28, 1983, and on December 7, 1983. Officer Maley testified that he was introduced to defendant through an informant. He purchased one ounce of cocaine from defendant on November 22, 1983, at the time he was introduced to defendant by the informant. He subsequently purchased two ounces of cocaine from defendant on November 28, 1983, and one-half kilo of cocaine on December 7, 1983. The informant was not present at either of the latter two sales, and Maley never utilized the informant in regard to defendant after November 22, 1983.

Maley arranged the latter two sales by telephoning defendant's pager and leaving a telephone number at which defendant subsequently called Maley. On December 7, 1983, Maley met with defendant at a motel room in which a video camera was secreted and taped the drug transaction between defendant and Maley. The videotape reveals that when Maley asked defendant how long he had been selling drugs, defendant responded that he had been selling drugs for one year and that the most he had sold at one time was a kilo. Defendant also stated that cocaine prices were down in Miami and New York. Maley gave defendant $19,000 in exchange for one-half kilo of cocaine, and defendant was arrested after exiting the motel room.

Defendant testified that on November 22, 1983, he was introduced to Maley by someone named Kevin that he had met through a friend of his. According to defendant, he was present when Kevin had purchased cocaine from his friend. He had not sold any drugs prior to meeting Kevin, and Kevin had contacted him about selling drugs. Defendant refused to sell drugs to Kevin initially; however, he changed his mind and sold drugs to Kevin after Kevin insinuated defendant would get a lot of money. Defendant also testified that he sold cocaine to Kevin because Kevin told him that he knew defendant was in this country illegally and that he would report him to immigration. Defendant never sold any drugs to Kevin prior to their conversation regarding his legal status.

Defendant admitted he sold drugs three times to Maley, on No-

vember 22, November 28, and December 7, 1983. Kevin was not present for the latter two sales, nor did defendant ever see Kevin and Maley together other than November 22. Defendant admitted on cross-examination, however, that he knew he could make a lot of money from selling drugs and that he sold cocaine to Maley mainly for the money. Defendant further admitted that he made $600 and $1,200 respectively from his first two sales to Maley and that he anticipated making $4,000 to $5,000 on the third sale.

Following the closing arguments, the jury was instructed and began its deliberations. Although we cannot ascertain from the record the exact time at which the jury began its deliberations, the record does indicate that the conference on instructions was in progress at 6:15 p.m. and that closing arguments were given and the jury was instructed prior to its beginning deliberations. At 1:39 a.m., the jury entered the courtroom. The following colloquy occurred between the trial judge and the foreman of the jury:

"THE COURT: All right. Let the record show that the hour is 1:39 a.m., January 31, 1987. Ladies and gentlemen, has this jury reached a verdict?

THE FOREMAN OF THE JURY: No, we have not.

THE COURT: Are you able to reach a verdict?

THE FOREMAN OF THE JURY: I believe not, your Honor.

THE COURT: If you are not going to be able to reach a verdict, I am going to house you in a local motel somewhere until this jury does reach a verdict. Take the jury back, please. Do you think you will be able to reach a verdict in the next few minutes, please? I will make arrangements for housing. Take the jury back."

Shortly thereafter, the bailiff told the trial judge that the jury had asked for "another hour." The trial judge later indicated for the record that he waited an hour and then "again informed them [the jury] that we would get lodging and ask for telephone numbers so that we could pick up their clothes and make arrangements to take them" and that the jury then asked for an additional 10 minutes. At 3:13 a.m. the jury returned with a not guilty verdict on one count and a guilty verdict on the other.

We address initially the State's appeal of that part of the circuit court's order which found that the jury coercion issue should have been raised in the direct appeal and that the failure to do so warranted the granting of another direct appeal. The State contends that the judge at the post-conviction proceedings was without jurisdiction

to order that defendant be granted a new appeal under the dispositional powers authorized in section 122—6 of the Post-Conviction Hearing Act (Act) (Ill. Rev. Stat. 1987, ch. 38, par. 122—6). Although the defendant sought a new trial below rather than a new appeal, he argues on appeal that the remedy provided here is a proper one within the circuit court's inherent power to right wrongs and fashion remedies appropriate to the circumstances. Defendant acknowledges, however, that there is no Illinois precedent on this issue.

■■ ■ Section 122—6 of the Act provides, in pertinent part, as follows:

"§122—6. Disposition in Trial Court. *** If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the judgment or sentence in the former proceedings and such supplementary orders as to rearraignment, retrial, custody, bail or discharge as may be necessary and proper." (Ill. Rev. Stat. 1987, ch. 38, par. 122—6.)

Even assuming that the post-conviction hearing judge correctly found that defendant's counsel for his direct appeal was incompetent through his failure to raise the issue of the trial court's coercion of the jury during deliberations, there is no authority granted in section 122—6 of the Act to order a new appeal. Rather, the Act itself provides a proper vehicle for review of this issue when review by direct appeal arguably has been unconstitutionally denied by deprivation of the right to competent counsel on appeal. (See *People v. Frank* (1971), 48 Ill. 2d 500, 504, 272 N.E.2d 25; *People v. Pecka* (1989), 183 Ill. App. 3d 60, 68, 538 N.E.2d 1189.) Accordingly, the post-conviction hearing judge was without authority to order a new appeal under the statutory authority conferred in section 122—6 of the Act. We therefore reverse that part of the judgment below.

■ As stated above, under the Act defendant is entitled to seek review of those issues as to which review by direct appeal has been unconstitutionally denied by deprivation of the right to competent counsel on appeal. (*Frank*, 48 Ill. 2d at 504, 272 N.E.2d at 27.) Where necessary, the Act may serve to vitiate the prejudice of waiver attendant upon incompetence of counsel on appeal, by serving as a vehicle for review of all directly appealable issues. (*Frank*, 48 Ill. 2d at 505, 272 N.E.2d at 27.) Thus, we turn to defendant's appeal of the post-conviction judge's denial of the grounds alleged in defendant's post-conviction petition.

Defendant contends on appeal that he was denied the effective assistance of appellate counsel for failure to raise three issues which were presented as error in the trial court, to wit: that he was en-

trapped as a matter of law, that the jury was coerced into reaching a verdict because of the trial judge's comments, and that due process was denied because he was interviewed in jail after counsel was appointed and because he cooperated with the police in exchange for a lesser sentence which was not ultimately consummated.

■ Before addressing each one of these claims, we set forth the pertinent rules of law by which we review the contention of ineffective assistance of appellate counsel on direct appeal. Whether defendant is entitled to review under the Act of the issues alleged depends upon the determination of his allegation that failure to raise each issue on appeal constituted incompetence of his appellate counsel. (*Frank*, 48 Ill. 2d at 505, 272 N.E.2d at 28.) Generally, there is no obligation of appellate counsel to brief every conceivable issue on appeal, and it is not incompetence for counsel to refrain from raising those issues which, in his judgment, are without merit, unless his appraisal of the merits is patently wrong. (*People v. Barnard* (1984), 104 Ill. 2d 218, 230, 470 N.E.2d 1005.) A claim that an appellate advocate chose the wrong issues to brief and was therefore incompetent is measured by the same two-part *Strickland* standard (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052) which has been adopted by our supreme court for trial counsel (*People v. Albanese* (1984), 104 Ill. 2d 504, 526-27, 473 N.E.2d 1246), as follows:

> "Where the defendant maintains, for example, that his appellate attorney failed to argue a particular issue, he must show the failure to raise that issue was objectively unreasonable, as well as a reasonable probability that, but for this failure, his sentence or conviction would have been reversed." (*People v. Caballero* (1989), 126 Ill. 2d 248, 270, 533 N.E.2d 1089, 1096.)

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies if it is easier to dispose of the ineffectiveness claim on the ground of lack of sufficient prejudice. *Albanese*, 104 Ill. 2d at 527, 473 N.E.2d at 1256.

We first address defendant's contention that appellate counsel was incompetent because he failed to raise the issue of entrapment on his direct appeal. Defendant maintains that entrapment was established as a matter of law because his testimony regarding the threats to report him to immigration authorities if defendant did not procure cocaine for him made to him by Kevin were unrebutted, and because there was no evidence that defendant was predisposed to commit any drug offense. Defendant further argues that as the jury acquitted him

on the first count, it must have done so because it believed he was entrapped, and therefore, it should have also acquitted him on the second count since the entrapment defense applied to the second count as well as the first.

■ Once the entrapment defense is raised, it becomes incumbent upon the State to prove beyond a reasonable doubt that entrapment did not occur. (Ill. Rev. Stat. 1983, ch. 38, par. 3—2(b); *People v. Cross* (1979), 77 Ill. 2d 396, 401, 396 N.E.2d 812.) The question of entrapment in a jury trial is usually one for the jury, unless the trial court or a reviewing court can find entrapment as a matter of law. (*People v. Tipton* (1980), 78 Ill. 2d 477, 487, 401 N.E.2d 528.) " '[E]ntrapment is not available as a defense to a person who has the intent and design to commit a criminal offense, and who does commit the essential acts constituting it, merely because an officer of the law, for the purpose of securing evidence, affords such a person the opportunity to commit the criminal act, or purposely aids and encourages him in its perpetration.' " *Tipton*, 78 Ill. 2d at 488, 401 N.E.2d at 533, quoting *People v. McSmith* (1961), 23 Ill. 2d 87, 89, 178 N.E.2d 641, 642.

■ Defendant's initial contention is not meritorious. Defendant did testify that Kevin said he would report him to immigration as being illegally in this country if he did not procure cocaine for him. This particular evidence was unrebutted because Kevin did not testify. However, defendant also testified that while he initially refused to sell drugs to Kevin, he did so after Kevin insinuated he could make a lot of money doing so. Moreover, he admitted that he knew he could make a lot of money selling drugs, that he sold drugs to Maley mainly for the money, and that he made $600 and $1,200 on the first two sales respectively and expected to make $4,000 to $5,000 on the third sale. Other evidence of defendant's predisposition to sell cocaine is his familiarity with the market price for such sales and his statement to Maley that he had been dealing in drugs for one year. (See *People v. Stallings* (1980), 83 Ill. App. 3d 533, 537, 404 N.E.2d 461.) Furthermore, the likelihood that Kevin's coaxing was the predominant cause of defendant's later sales to Maley, which were the two offenses with which he was charged, was lessened because the deliveries to Maley occurred on separate occasions from the sales to Kevin and when Kevin was not present. (See *People v. Marshall* (1981), 101 Ill. App. 3d 244, 247, 427 N.E.2d 1333.) Maley also testified that he did not make any threats to defendant, which is supported by the tape recording and videotape of the events leading up to the December 7 sale.

Determining the credibility of the witnesses and the weight to be

given to their testimony is a function reserved primarily for the trier of fact, and a court of review will not normally substitute its own judgment in that regard. (*People v. Locascio* (1985), 106 Ill. 2d 529, 537, 478 N.E.2d 1358.) Because the jury could have chosen to believe defendant's testimony that he sold the drugs for the money and discredited his testimony that he was threatened, defendant did not establish the defense of entrapment as a matter of law, as he argues.

■ Furthermore, defendant's alternate contention is equally meritless. There is simply no basis in the record to conclude that the jury's acquittal on one of the two counts was based on its acceptance of defendant's entrapment offense. The jury may very well have found the evidence as to one count insufficient or the verdicts could have been based on compromise, lenity, or confusion. (See *People v. Foley* (1987), 152 Ill. App. 3d 354, 357, 504 N.E.2d 254.) We need not speculate as there was a plausible alternative basis for the verdicts. (*Foley*, 152 Ill. App. 3d at 357, 504 N.E.2d at 255.) As we find no basis for setting aside the jury's verdict, defendant suffered no prejudice from his appellate counsel's failure to raise the issue on appeal.

We next consider whether it was incompetent for appellate counsel not to have raised the issue of the denial of defendant's motion to either dismiss the indictment, enforce a six-year plea agreement, or strike Maley's testimony. Defendant moved at trial to either dismiss the indictment, enforce a six-year plea agreement, or strike Maley's testimony because Maley told him, when his counsel was not present, that he would arrange for the prosecution to recommend a six-year sentence in exchange for defendant's cooperation in investigating narcotics trafficking, and that he had been questioned about trafficking and distribution of cocaine.

The record of the evidentiary hearing on defendant's motion reveals that Maley, accompanied by another agent of the Illinois State Police, met with defendant at the Lake County jail. Maley testified that he did not give *Miranda* warnings to defendant and that his purpose in talking to him was to see if defendant would provide information in unrelated narcotics cases in exchange for a plea arrangement, if it could be worked out with his attorney and the State's Attorney's office. According to Maley, he asked defendant if he would be willing to arrange multi-kilo cocaine transactions, to which defendant responded that he would. Maley further testified that he attempted to get defendant's attorney's name and telephone number from defendant so that a meeting could be arranged between defendant's attorney and the State's Attorney's office in an attempt to work out an agreement. He explained to defendant that his attorney and the State's At-

torney's office would have to agree before any arrangement could be worked out. On cross-examination, Maley stated that he discussed the potential sentence of 6 to 30 years with defendant and told defendant he was probably looking at 30 years in the penitentiary. The other agent present testified and essentially corroborated Maley's testimony. Defendant testified that Maley told him he could reduce his prison term to six years if defendant would provide Maley with the names of cocaine dealers. There is no evidence in the record indicating that Maley had any further contact with defendant in this regard or that Maley ever discussed the matter with defendant's attorney.

 It is clear from reading defendant's motion in the trial court that he sought one of the three above-described remedies based on an asserted denial of due process. Such a denial of due process was premised on defendant's contention that Maley promised him he would receive a reduced sentence if he cooperated with other narcotics investigations and that such promise caused defendant to believe more in Maley than his own attorney. Maley's testimony, corroborated by the other agent, establishes that Maley merely asked defendant if he would be interested in cooperating in exchange for a reduced sentence if an agreement to that effect could be reached by defendant's attorney and the State's Attorney's office. Here, the trial court found portions of defendant's testimony inconsistent and also found it to be contradicted by Maley's testimony. Based on the trial court's assessment of the evidence, it found that no promises or agreements were made and that defendant suffered no prejudice. Because the trial judge, as trier of fact, is in the best position to assess the credibility of the witnesses, we will not substitute our judgment in that regard. (See *People v. Navarroli* (1988), 121 Ill. 2d 516, 521, 521 N.E.2d 891.) Accordingly, defendant suffered no prejudice in his appellate counsel's failure to raise this meritless issue on his direct appeal.

We finally consider defendant's contention that the trial judge coerced the jury into reaching a verdict when he stated the following:

"THE COURT: All right. Let the record show that the hour is 1:39 a.m., January 31, 1987. Ladies and gentlemen, has this jury reached a verdict?

THE FOREMAN OF THE JURY: No, we have not.

THE COURT: Are you able to reach a verdict?

THE FOREMAN OF THE JURY: I believe not, your Honor.

THE COURT: If you are not going to be able to reach a verdict, I am going to house you in a local motel somewhere until this jury does reach a verdict. Take the jury back, please.

Do you think you will be able to reach a verdict in the next few minutes, please? I will make arrangements for housing. Take the jury back."

In reviewing the propriety of a trial court's comments to the jury, the test is whether the language used actually interfered with or coerced the verdict to the prejudice of the defendant. (*People v. Craddock* (1987), 163 Ill. App. 3d 1039, 1045, 516 N.E.2d 1357.) Informing a jury that it will be sequestered after a certain time is not necessarily coercive. (*People v. Thomas* (1989), 185 Ill. App. 3d 1050, 1057, 542 N.E.2d 100; *Craddock*, 163 Ill. App. 3d at 1045, 516 N.E.2d at 1362; *People v. Friedman* (1986), 144 Ill. App. 3d 895, 903, 494 N.E.2d 760.) The trial court has discretion to have the jury continue its deliberation even though the jury has reported it is deadlocked and will be unable to reach a verdict. (*People v. Cowan* (1985), 105 Ill. 2d 324, 328, 473 N.E.2d 1307.) Further, the length of deliberations following a trial court's comments, while alone being inconclusive in determining whether the comments were the primary factor in procuring the verdict, are relevant to the issue of verdict coercion, and brief deliberations do invite an inference of coercion. *People v. Branch* (1984), 123 Ill. App. 3d 245, 252, 462 N.E.2d 868; see *Friedman*, 144 Ill. App. 3d at 903-04, 494 N.E.2d at 765.

Here, the trial judge's comments went beyond just informing the jury to continue its deliberations and informing it that it will be sequestered after a certain time if it has not reached a verdict. The court stated unequivocally, after being informed by the foreman that he believed they were not able to reach a verdict, that "if you are not going to be able to reach a verdict, I am going to house you in a local motel somewhere *until this jury does reach a verdict.*" (Emphasis added.)

This court stated recently in *People v. Gregory* (1989), 184 Ill. App. 3d 676, 540 N.E.2d 854, as follows:

" 'The integrity of the jury's verdict must be protected from coercion, duress or influence.' (*People v. Patten* (1982), 105 Ill. App. 3d 892, 894.) Thus, a court's judgment must be reversed and the cause remanded when, taken in context and considering all the circumstances of the case, its supplemental instruction to a jury has the effect of coercing jurors into surrendering views conscientiously held. (*Jenkins v. United States* (1965), 380 U.S. 445, 13 L. Ed. 2d 957, 85 S. Ct. 1059.) 'A verdict hastened by the action of the judge, however worthy the motive, cannot be the result of that deliberation which the law guarantees.' (*People v. Golub* (1929), 333 Ill. 554, 561.) The possibility

of a hung jury is an inevitable by-product of a unanimous-verdict requirement, and the jury cannot be compelled to reach a verdict in all instances. *Pankey*, 58 Ill. App. 3d at 926." 184 Ill. App. 3d at 680-81, 540 N.E.2d at 857.

A court's instruction to a jury to continue deliberating should be simple, neutral, and not coercive. (*People v. Campbell* (1987), 163 Ill. App. 3d 1023, 1032, 516 N.E.2d 1364.) Because a determination of whether something has actually had a coercive effect or not requires knowledge of the jurors' subjective thoughts, which this court has no way of ascertaining, the test effectively turns on a consideration of whether the trial court's instruction imposed such confusion or pressure on the jury to reach a verdict that the accuracy and integrity of the verdict returned becomes uncertain. *People v. Branch* (1984), 123 Ill. App. 3d 245, 251, 462 N.E.2d 868.

We conclude that the trial judge's comments were coercive in that they conveyed to the jurors that they *must* arrive at a verdict by stating they would be housed in a motel until they reached a verdict. This direction did not leave the option of returning no verdict if the jurors were unable to arrive at a verdict, as the jury foreman had just indicated to the court. (See *People v. Robertson* (1981), 92 Ill. App. 3d 806, 809, 416 N.E.2d 323.) It is entirely possible that the subsequent not guilty verdict and the guilty verdict on the two very similar cocaine sales represented a compromise verdict because of the judge's statements. For these reasons, we conclude defendant was prejudiced and the failure of his counsel on the direct appeal to raise this issue was objectively unreasonable. We, therefore, reverse the judgment below and remand for a new trial.

The judgment of the circuit court of Lake County is reversed in No. 2—89—0344; and the judgment is reversed and the cause is remanded in No. 2—89—0287.

No. 2—89—0344, Reversed.

No. 2—89—0287, Reversed and remanded.

DUNN and INGLIS, JJ., concur.