THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TOMMY G. FOSTER, Defendant-Appellant.

Fourth District   No. 4—08—0459

Opinion filed September 2, 2009.

Michael J. Pelletier, Gary R. Peterson, and Michael H. Vonnahmen, all of State Appellate Defender's Office, of Springfield, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

In March 2008, a jury convicted defendant, Tommy G. Foster, of aggravated unlawful use of a weapon (720 ILCS 5/24—1.6(a)(1), (a)(3)(A) (West 2006)). In May 2008, the trial court sentenced him to a term of 24 months' conditional discharge. He appeals, contending his conviction should be reversed because (1) the trial court erred by denying his motion for a mistrial when the jury sent out a note indicating it could not reach a verdict because one juror felt she could not judge defendant and (2) he was not found guilty beyond a reasonable doubt as the State failed to prove the firearm in question was in a functioning state. We affirm.

## I. BACKGROUND

The following evidence was presented at defendant's March 2008 jury trial. On April 6, 2007, Normal police officer Steven Koscielak

conducted a traffic stop of a vehicle driven by defendant. Koscielak arrested defendant after learning he had a suspended driver's license. Koscielak searched defendant's car and found a loaded 9-millimeter pistol in the center console, located between the driver and front passenger seat. The gun was "barrel-side down with the pistol grip pointing up" at a right angle. The console was unlocked and within reach from the driver's seat.

Kelly Greenwell testified defendant was giving her and Orlando Jones a ride when stopped by Officer Koscielak. She was seated in the front passenger seat and Jones sat in the backseat. Greenwell did not see defendant with a gun prior to the stop and had "no clue" a gun was in the center console. She assumed the car was defendant's because he had told her it was his vehicle and she had seen him driving it prior to April 6, 2007. Greenwell also stated she did not see Jones with a gun. She said she probably would have noticed if Jones had opened the center console.

Defense counsel argued the State had not proved defendant knowingly or constructively possessed the gun because three people were within reach of the gun and the police did not fingerprint the weapon to tie it to him.

The jury retired to deliberate at about 11 a.m. on March 19, 2008. The trial court asked the alternate juror to wait for one hour in case she had to participate in deliberations. The court then received several notes from the jurors. The first two requested the "defense questioning of Ms. Greenwell," which was provided, and the second note requested the direct examination of Greenwell, which was also provided.

At approximately 3:45 p.m., the trial court received a third note from the jury which read: "We have one member who feels that she is not capable of judging the [d]efendant, and we are unable to come to a verdict." Defense counsel argued the "only appropriate resolution is a mistrial," given the "first portion of this note," which "signals maybe an extra problem other than just jurors not coming to a decision." He questioned whether there was any response that "wouldn't put extreme pressure on that one juror" and noted the alternate juror had been discharged. The prosecutor asked the court to give the supplemental instruction set forth in *People v. Prim*, 53 Ill. 2d 62, 74-75, 289 N.E.2d 601, 608-09 (1972).

The trial court agreed the first portion of the note is the "problematic part" and it did not want to coerce someone who is "authentically not capable of judging the [d]efendant." The court wondered if the characterization of the juror's state of mind was accurate, however, as the note was written by someone else and the in-

ability to deliberate is inconsistent with the oath the jurors took. The court decided:

> "[I]t would be error to tell that one jury member that you've got to do what you're conscientiously not capable of doing. On the other hand, I'm not persuaded that that is the fact of the matter. The only way I can determine that, in my view, under the circumstances that have been presented to me, is to require the deliberation process to go on for a time."

The court went on to express its suspicion this was simply a part of the process where a jury member is "experiencing the extraordinary difficulty associated with passing judgment," and this difficulty is being characterized either by another juror, the foreperson, or by himself or herself as just not being capable of reaching a judgment in this case. However, experience with juries shows the minds of jurors evolve as the process unfolds. The court opined that if there is an actual incapacity to judge, it will endure and there will be another message later. The court responded to the jury: "The Court has reviewed and considered your communication. However, at this time the Court is directing you to continue your deliberations."

At 4:30 p.m. the jury returned a guilty verdict. The trial court estimated this was approximately 10 minutes after the jury received its instruction to continue deliberating. When polled, each juror unequivocally affirmed the verdict.

The trial court sentenced defendant as stated. This appeal followed.

## II. ANALYSIS

### A. Motion for Mistrial

Defendant argues the trial court erred in denying his motion for a mistrial when the jury sent the note indicating it could not reach a verdict because one juror felt she could not judge defendant.

The standard of review for a trial court's grant or denial of a motion for a mistrial is abuse of discretion. *People v. McDonald*, 322 Ill. App. 3d 244, 250, 749 N.E.2d 1066, 1071 (2001). The decision to declare a mistrial lies within the discretion of the court, and a mistrial should be declared only if there is some occurrence at trial of such a character and magnitude that the party seeking a mistrial is deprived of a fair trial. *People v. Menssen*, 263 Ill. App. 3d 946, 950, 636 N.E.2d 1101, 1104 (1994).

It is improper for a trial court to communicate any message calculated to hasten a verdict. *People v. Golub*, 333 Ill. 554, 561, 165 N.E. 196, 199 (1929). The test is whether, under the circumstances, the language used by the court actually coerced or interfered with the

deliberations of jurors to the prejudice of a defendant. *People v. Gregory*, 184 Ill. App. 3d 676, 681, 540 N.E.2d 854, 857 (1989). If a court's instruction to the jury imposed such coercion, the accuracy and integrity of the verdict would then be uncertain and the defendant is entitled to a new trial. *Gregory*, 184 Ill. App. 3d at 686, 540 N.E.2d at 860.

Defendant argues the trial court's urging the jury to continue to deliberate under these circumstances served to pressure the juror in question to judge defendant even though she stated she could not do so and, thus, could not fulfill her duty as a juror to apply the law to the facts and decide the case. Defendant contends the "clear implication" of the court's response was the court wanted a verdict regardless of the juror's personal moral misgivings. This was not a deadlocked jury where the jurors could not agree on a unanimous verdict and an instruction based on *Prim* was appropriate. The issue was not that the jury could not unanimously reach a verdict but that an individual juror was unable to judge the defendant. Defendant contends the court's action pressured the juror to make a decision in order to hasten the verdict, and therefore, his motion for mistrial should have been granted. See *Gregory*, 184 Ill. App. 3d at 686, 540 N.E.2d at 860.

In this case there was only one report, by the jury foreperson, "one member *** feels that she is not capable of judging the [d]efendant, and we are unable to come to a verdict." The trial court was reluctant to accept the foreperson's description of the jury member's state of mind and concluded an instruction to continue to deliberate would reveal whether the juror was truly unable to judge defendant or simply having "difficulty" passing judgment. The instruction to continue deliberations was not coercive. As the court suspected, the juror was able to perform her duty as deliberations continued for about 10 minutes and a verdict was reached. The court did not abuse its discretion in denying defendant's request for a mistrial.

Defendant argues, alternatively, the trial court should have conducted an inquiry of the juror in question to determine why she felt she could not judge defendant. Once a trial court learns a juror has expressed the belief she cannot follow jury instructions, the court has a duty to inquire why she cannot do so in order to preserve a defendant's right to a trial by an impartial jury. *People v. Peterson*, 15 Ill. App. 3d 110, 111, 303 N.E.2d 514, 515 (1973). However, defendant did not ask the court to question the juror and *insisted* the only appropriate remedy was a mistrial. Defendant cannot now contend error in failing to question the juror. See *People v. Carter*, 208 Ill. 2d 309, 319, 802 N.E.2d 1185, 1190 (2003) (accused may not request to proceed

in one manner and later contend on appeal the course of action was error).

## B. Reasonable Doubt

■ Defendant contends the State failed to prove him guilty beyond a reasonable doubt because the essential elements of the offense of aggravated unlawful use of a weapon include his knowing possession in a vehicle of a firearm in a "functioning state." He argues the State failed to present evidence the gun taken from his vehicle was in such a state and the gun was not produced at trial.

Where the question is whether a defendant was proved guilty beyond reasonable doubt, the appellate court reviews the evidence in the light most favorable to the prosecution. *People v. Pollock*, 202 Ill. 2d 189, 217, 780 N.E.2d 669, 685 (2002). If any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt, a defendant's conviction is affirmed. *Pollock*, 202 Ill. 2d at 217, 780 N.E.2d at 685.

Defendant was charged with and convicted of aggravated unlawful use of a weapon in violation of sections 24—1.6(a)(1) and (a)(3)(A) of the Criminal Code of 1961 (720 ILCS 5/24—1.6(a)(1), (a)(3)(A) (West 2006)). This section states:

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser[,] or other firearm; [and]
\*\*\*

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded[,] and immediately accessible at the time of the offense[.]" 720 ILCS 5/24—1.6(a)(1), (a)(3)(A) (West 2006).

To be found guilty of aggravated unlawful use of a weapon, the State must prove (1) the defendant knowingly carried a firearm on or about his person or in any vehicle or concealed on or about his person; (2) the defendant was not on his own land or in his abode or fixed place of business; and (3) the firearm was uncased, loaded, and immediately accessible at the time of the offense. *People v. Vasquez*, 368 Ill. App. 3d 241, 249, 856 N.E.2d 523, 531 (2006).

Defendant argues because the statute also includes certain exceptions, the State must also prove those exceptions do not exist. He notes section 24—1.6(c) provides:

"(c) This [s]ection does not apply to or affect the transportation or possession of weapons that:

(i) are broken down in a nonfunctioning state; or

(ii) are not immediately accessible; or

(iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid [f]irearm [o]wner's [i]dentification [c]ard." 720 ILCS 5/24—1.6(c) (West 2006).

Specifically, defendant argues the essential elements of the charge of aggravated unlawful use of a weapon include, in this case, the defendant's knowing possession in a vehicle of a firearm in a "functioning state" as opposed to the nonfunctioning state, as provided as exception in section 24—1.6(c)(i) (720 ILCS 5/24—1.6(c)(i) (West 2006)).

The State bears the burden of disproving, beyond a reasonable doubt, the existence of the exceptions appearing as part of the body of a substantive offense in order to sustain a conviction for the offense. *People v. Laubscher*, 183 Ill. 2d 330, 335, 701 N.E.2d 489, 491 (1998). *Laubscher*, also involving a charge of unlawful use of a weapon, dealt with the State's failure to prove at the time the defendant possessed the weapon he was not "on his land" or in his "fixed place of business" as provided in section 24—1.6(a)(1):

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser[,] or other firearm[.]" 720 ILCS 5/24—1.6(a)(1) (West 2006).

The exception referred to by defendant is not found in the body of the offense charged. It is found later in section 24—1.6 in subsection (c)(i) referring to a weapon in a broken down and nonfunctioning state, and the State is not required to disprove that exception. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we grant the State its statutory assessment of $50 against defendant as costs for this appeal.

Affirmed.

McCULLOUGH, P.J., and STEIGMANN, J., concur.