CLINTON DEAN LOVELL, Plaintiff-Appellee, v. SARAH BUSH LINCOLN HEALTH CENTER, Defendant-Appellant.

Fourth District    No. 4—09—0249

Argued December 16, 2009.—Opinion filed January 12, 2010.

Karen L. Kendall (argued), of Heyl, Royster, Voelker & Allen, and Kevin M. Miller and Elizabeth F. Larsen, both of Quinn, Johnston, Henderson, Pretorius & Cerulo, all of Peoria, for appellant.

Michael W. Rathsack (argued), and Steven K. Jambois, Alexander M. Sukhman, and Ryan E. Yagoda, all of Kralovec, Jambois & Schwartz, all of Chicago, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In June 2005, plaintiff, Clinton Dean Lovell, sued defendant, Sarah Bush Lincoln Health Center (Health Center), for medical malpractice, claiming that the Health Center's negligence following his August 2003 surgery caused him severe and permanent injury. Following a September 2008 trial, a jury returned a verdict in Lovell's favor and awarded him $2,378,258.

The Health Center appeals, arguing that (1) it is entitled to a new trial because of Lovell's argumentative and prejudicial comments during his opening statement and (2) the trial court abused its discretion by (a) denying its motion for a mistrial based on Lovell's improper

closing argument and (b) allowing Lovell to introduce evidence regarding certain medical literature related to its standard of care after the Health Center had stipulated that it breached that standard. Because we (1) conclude that the Health Center forfeited any challenge to Lovell's opening statement and (2) disagree that the court abused its discretion, we affirm.

# I. BACKGROUND

## A. The Pertinent Portion of Lovell's Opening Statement

At the start of Lovell's opening statement—which we note comprised 27 pages of the record—his counsel stated, in pertinent part, the following:

"Mistakes matter. Negligence matters. On August 16, 2003, a [Health Center] nurse disregarded a doctor's order that caused devastating and grotesque injury to *** Lovell.

In this case, [the Health Center] has admitted negligence. They have admitted that they committed medical malpractice. So why are we here? We're here today because rather than taking *** responsibility for their actions, they are going to tell you that mistakes don't matter. That negligence doesn't matter. That bad things just coincidentally happen to good people at the exact time malpractice occurs."

## B. The Evidence Presented at Trial

The evidence presented at the September 2008 trial, which consisted, in pertinent part, of testimony from (1) Lovell, (2) an emergency room physician, (3) Lovell's urologist, (4) a certified nursing assistant (CNA), and (5) various medical experts, showed the following.

In July 2003, Lovell was diagnosed with prostate cancer. On August 11, 2003, Lovell underwent a "radical retropubic prostatectomy" at the Health Center to remove his prostate. As a result of the prostatectomy, a "Foley catheter" was used to help Lovell urinate. On August 15, 2003, Lovell returned to one of the two urologists who had performed his prostatectomy, complaining of "a bloated, constipated feeling." The urologist examined Lovell and noted that (1) he did not have nausea, infection, or a fever; (2) he had normal bowel sounds; (3) he had regained normal bowel movements; and (4) the urine in his catheter bag was clear. The urologist opined that Lovell was proceeding through "a normal course of healing."

The next day, Lovell went to the Health Center's emergency room because his condition had not improved. The emergency room physician initially diagnosed Lovell with a "postoperative ileus," which the physician explained is a condition in which the bowel does not have its

normal rhythmic pulsating muscular function to propel liquid and food in one direction. A later urinalysis revealed that Lovell had a significant urinary-tract infection, which the physician opined could have originated from Lovell's catheter. The physician explained Lovell's examination results did not indicate that he was suffering from a postoperative fistula, which is an abnormal opening formed by disease or injury leading from one cavity to another (such as an opening between the rectum and bladder). That same day, the physician admitted Lovell to the Health Center.

A family physician later examined Lovell and wrote the following order in his hospital chart: "Fleets enema—if okay with Dr. Rives [(who was Lovell's urologist)]." Shortly thereafter, a nurse—who had not obtained the required approval from Dr. Rives—ordered a CNA to give Lovell a tap-water enema. After administering a "tiny amount" of water, the CNA noticed it leaking into Lovell's catheter bag, which was abnormal. The CNA reported the problem and then retrieved Lovell's chart to document the event and noticed the family physician's order that giving the Fleets enema was conditioned upon Dr. Rives' approval.

After being informed by a nurse of the enema incident, Dr. Rives later determined that Lovell had a fistula, which he explained had occurred between his rectum and his bladder. Dr. Rives opined that to a reasonable degree of medical certainty, the enema the Health Center administered to Lovell—which he would not have approved—caused the fistula. In particular, the urologist stated the following:

> "The rectum is only a few millimeters thick, and after surgery, it certainly is more compromised than it would be before the surgery. The *** area that we closed with those stitches, is laying right on top of that thin rectum. I feel this fistula occurred either from one of two mechanisms. Either the pressure of giving that liquid, just the increased pressure of inflating the rectum caused the leakage to come through at that point, or the enema tip directly compromised the rectum and opened up the rectum into the freshly sutured area."

In an unsuccessful attempt to determine if the passage of time would heal the fistula, Lovell underwent the following medical procedures: (1) nutrition supplied intravenously for approximately two weeks following the enema; (2) a September 2003 colostomy, which diverted his stool from encountering the fistula; and (3) a January 2004 operation to implement a bladder catheter, which diverted his urine directly from his bladder through his abdominal wall and into a catheter bag to avoid the still unhealed fistula. In April 2004, Lovell underwent surgery to repair the fistula. In July 2004, Lovell's

colostomy was reversed. In October 2004, Lovell had surgery to correct his urinary incontinence by implanting an artificial sphincter in his scrotum.

Lovell explained to the jury the procedure that he needed to follow to urinate after the artificial sphincter was implanted. Specifically, he would (1) drop his pants, (2) sit on the commode, where he could spread his legs, and (3) locate and press the releasing bulb several times on the artificial sphincter. The bulb would release an internal pressure cuff—that was wrapped around his urethra—which allowed him to urinate. Lovell commented that because the artificial sphincter would fail about twice a year, he continually maintained a second set of clothes. He also explained that he had to wear diapers—which he occasionally had to change up to three times a day—because the artificial sphincter would occasionally leak if he coughed or placed pressure on his stomach by bending over.

Lovell presented expert medical testimony from a colorectal surgeon and urologist who, respectively, opined to a reasonable degree of medical certainty that (1) the enema administered by the Health Center penetrated the rectal wall, which caused Lovell's fistula and (2) Lovell's incontinence resulted from the subsequent surgery to correct his fistula, which was caused by the enema administered by the Health Center.

The Health Center presented, in pertinent part, three experts in the fields of urology, colorectal surgery, and anatomic pathology who, respectively, opined to a reasonable degree of medical certainty as follows: (1) an inadvertent surgical accident during the prostatectomy caused a fistula between the bladder and rectum, which could have been concealed by a blood clot that was "blown out of the way" by the enema; (2) because bleeding did not occur when the Health Center administered the enema, the enema uncovered a preexisting fistula, which was caused by Lovell's prostatectomy; and (3) pathology slides showed that Lovell's fistula was caused by the removal of too much rectal tissue during his prostatectomy.

Lovell also presented expert testimony from an anatomic pathologist to rebut the testimony of the Health Center's retained pathologist. In particular, Lovell's pathologist opined that (1) the pathology slides from Lovell's prostatectomy contained bladder tissue rather than rectal tissue; (2) even if the pathology slides contained rectal tissue, such tissue (a) does not indicate a rectal perforation and (b) was removed from a different location than where Lovell's fistula occurred; and (3) the location of the fistula was clearly within range of the enema tip. Lovell's pathologist opined that the timing of events between the administration of the enema by the Health Center and

the discovery of the fistula was "far more compelling as a cause and effect" than the prostatectomy, which occurred five days earlier.

## C. The Pertinent Portion of Lovell's Closing Argument

During Lovell's closing argument, his counsel stated, in pertinent part, the following:

"Every two hours, every day, every month, every year, for [life] to go through what he described in order to urinate. To need bathroom accommodations from [the trial court] and other people everywhere he goes.

What [Lovell] has gone through and will continue to go through because of [the Health Center's] admitted negligence is the exact opposite of a normal life."

## D. The Trial Court's Admonishment

After Lovell's counsel completed his closing arguments, the trial court ordered a recess. Outside of the presence of the jury, the court admonished Lovell's counsel as follows:

"[THE COURT:] Counsel approach the bench a moment. There were no objections in the argument, but one thing [the court] noted, that [the court] just would caution you. You got [the court] involved in your argument, and [the court is] not supposed to be involved, when you indicated that [the court] had made special provisions for [Lovell].

Now, [the court is] not saying that isn't true, but it's not evidence in front of the jury, and it may indicate some sympathy on [the court's] part. In other words, there was no objection, but it really bothered [the court]. [The court] understand[s] you were going to tell [the court] it's unintentional, but you see what [the court is] getting at. [The court has] no problem with an advocate trying to push as far as they can for their side of the case, but [the court] wasn't happy when [the court] was [mentioned] in [your closing] argument as [making accommodations for] your client.

[The court is] going to *** instruct the [jury] *** that by no remark [the court has] made or any ruling on objections or anything else do[es the court] indicate any position one way or the other on this case.

*** [D]o you see where [the court is] coming from?

[LOVELL'S COUNSEL:] I understand what you're saying."

(Prior to the jury's deliberation, the court instructed the jury in accordance with its aforementioned remarks.)

## E. The Health Center's Motion for Mistrial

After returning from the trial court's recess, and still outside the presence of the jury, the Health Center moved for a mistrial based, in

part, on Lovell's comments to the jury in closing argument concerning the restroom accommodations the court provided for Lovell. After hearing counsel's response that his comments regarding the accommodations were not intentional, the court stated the following:

"[The court will] take *** your statement, because you're an officer of the [c]ourt, at face value, that there was no intent ***. ***

Also, it's [the court's] recollection *** that the jury was told *** that your client would have to leave the courtroom from time to time, so they were aware of his problem ***. ***

Just so the record is clear, for the [a]ppellate [c]ourt, it is a closer distance *** for your client to go through the door out of the courtroom through a hallway into [the court's] chambers to use the restroom rather than go out through the bar, *** in[to] the hallway, and *** go into [a] *** public restroom. That's the accommodation [the court believes] you were referring to. So from time to time, [the jury saw Lovell] leave. *** [The jury was] told ahead of time [that Lovell] was going to be leaving. ***

[Mentioning that the court gave Lovell] an accommodation was inappropriate. [The court is] not saying it was intentional. ***

[The court is] going to deny the motion for mistrial."

### F. The Jury's Determination

Following the presentation of evidence and argument, the jury returned a verdict in Lovell's favor and awarded him approximately $2,378,258.

This appeal followed.

## II. ANALYSIS

### A. The Health Center's Claims Regarding Lovell's Opening Statement

The Health Center argues that it is entitled to a new trial because of Lovell's argumentative and prejudicial comments during his opening statement. Lovell responds that, with the exception of one opening-statement comment—that the Health Center objected to and the trial court sustained—the Health Center has forfeited its argument. We agree with Lovell.

An opening statement presents counsel with the opportunity to summarily outline to the trier of fact what counsel expects the evidence presented at trial will show. *Hilgenberg v. Kazan*, 305 Ill. App. 3d 197, 210, 711 N.E.2d 1160, 1169 (1999). To preserve a claim that a party is entitled to a new trial based on the other party's prejudicial remarks during opening statements, the appellant must raise a contemporaneous objection at trial to the complained-of

remarks. *Nassar v. County of Cook*, 333 Ill. App. 3d 289, 304, 775 N.E.2d 154, 167 (2002); *People v. Ward*, 371 Ill. App. 3d 382, 419-20, 862 N.E.2d 1102, 1138 (2007).

In this case, the Health Center contends that Lovell's opening statement "theme" that "medical malpractice and carelessness matters" was an "argument designed to inflame the jury from the outset." To buttress its contention in this regard, the Health Center, in its brief to this court, quotes the first 2 aforementioned paragraphs of Lovell's opening statement as well as 10 other statements from the record, which it claims announces and reiterates Lovell's prejudicial theme. However, the record shows that within the 27 pages of the record that comprise Lovell's opening statement, the Health Center did not object to any of the 11 statements it now brings to this court's attention.

Indeed, the Health Center's first and only objection to Lovell's opening statement occurred after Lovell conveyed 80% of his opening statement to the jury and pertained not to his "argumentative and prejudicial theme" but, instead, to Lovell's argumentative characterization of what the Health Center's evidence would show, as follows:

"[LOVELL'S COUNSEL:] I think the evidence is going to show that [the Health Center] will essentially blame [the urologists] who practice[d] in [the Health Center's] own hospital and cured [Lovell] of cancer, for causing injury to [Lovell] during surgery without [the urologists] knowing it.

Then they will likely claim that their indefensible negligent act was a good thing and that it was simply a coincidence that the exact moment in time of the admitted negligence the enema diagnosed the [fistula]. It didn't create it. In other words, *** Lovell should thank [the Health Center] because its negligence was truly a blessing in disguise.

[THE HEALTH CENTER'S COUNSEL:] Your Honor, I have to object to the argument.

THE COURT: [The court is] going to sustain.

[THE HEALTH CENTER'S COUNSEL:] Thank you.

THE COURT: We're not at closing argument. We're at opening statement.

[LOVELL'S COUNSEL:] Okay, thank you."

Nonetheless, the Health Center further asserts that under the First District's decision in *Spyrka v. County of Cook*, 366 Ill. App. 3d 156, 851 N.E.2d 800 (2006), it was not required to make a contemporaneous objection to each of Lovell's argumentative and prejudicial comments to preserve this issue on appeal. However, *Spyrka* is distinguishable.

In *Spyrka*, 366 Ill. App. 3d at 165-66, 851 N.E.2d at 809, the First District concluded that the defendants did not have to renew their objection to the admission of a video animation at trial where the trial court had (1) decided to allow introduction of the video, (2) denied the defendants' motion for reconsideration and alternate relief, (3) denied two defense motions for a mistrial, and (4) invited defense counsel to appeal the court's determination. Given the record, the First District concluded that the "defendants were entitled to conclude that the [court] would continue to make the same ruling and were not required to repeat the objection." *Spyrka*, 366 Ill. App. 3d at 166, 851 N.E.2d at 809.

Here, the Health Center's argument did not concern evidence introduced at trial but, rather, pertained to Lovell's opening statement. The record shows that the trial court admonished the jury on three separate occasions that it should not consider opening statements as evidence. In addition, unlike in *Spyrka*, the Health Center failed to make any objections to the comments it now contends were prejudicial. Thus, *Spyrka* does not offer the Health Center any support.

■ This court is mindful that in the course of representing their clients, trial attorneys may (1) make a tactical decision not to object to otherwise objectionable evidence or argument, which waives such issues on appeal, or (2) fail to recognize the objectionable nature of the evidence or argument, which results in procedural forfeiture. See *Gallagher v. Lenart*, 226 Ill. 2d 208, 229, 874 N.E.2d 43, 56 (2007) (forfeiture is the failure to make a timely assertion of a known right whereas waiver is the intentional relinquishment of a known right).

■ In this case, the Health Center may have made a tactical judgment not to object to the 11 comments it now claims constitute substantial prejudicial error that warrants a new trial. However, for our purposes, the reasons why the Health Center did not object do not matter. Under either scenario, the Health Center's failure to object— whether intentional or unintentional—deprived the trial court of the opportunity to rule on any allegedly objectionable argument and, by extension, fails to preserve any such claims on appeal.

### B. The Health Center's Claims Regarding Lovell's Closing Argument

The Health Center next argues that the trial court abused its discretion by denying its motion for mistrial based on Lovell's improper closing argument. Specifically, the Health Center contends that Lovell's argument to the jury that the trial court had made special accommodations for Lovell (1) "impugned the integrity of the court

and harmed our system of justice by implying favoritism" and (2) was designed to "further create passion and prejudice in the minds of the jury." We disagree.

"Generally, a mistrial should be granted where an error of such gravity has occurred that it has infected the fundamental fairness of the trial, such that continuation of the proceeding would defeat the ends of justice." *People v. Bishop*, 218 Ill. 2d 232, 251, 843 N.E.2d 365, 376 (2006). A trial court's denial of a motion for a mistrial will not be disturbed absent a clear abuse of discretion. *People v. Foster*, 394 Ill. App. 3d 163, 166, 915 N.E.2d 448, 451 (2009). " 'An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *People v. Sutherland*, 223 Ill. 2d 187, 272-73, 860 N.E.2d 178, 233 (2006), quoting *People v. Hall*, 195 Ill. 2d 1, 20, 743 N.E.2d 126, 138 (2000).

■ In this case, we agree with the trial court's finding that Lovell's comment in closing argument concerning the court's accommodation was inappropriate. However, despite the Health Center's characterization of that comment, the record before us falls short of a matter that "infected the fundamental fairness of the trial." *Bishop*, 218 Ill. 2d at 251, 843 N.E.2d at 376. Instead, the records shows that (1) the jury was made aware at the start of trial that Lovell would have to leave the courtroom occasionally to use the restroom and (2) the jury undoubtedly saw Lovell leave the courtroom through a different door other than the court's designated exit.

Moreover, even if Lovell did not mention the court's accommodations in his closing argument, the jury could have reasonably inferred that Lovell required such an accommodation based on his testimony on the first day of trial regarding (1) the unusual steps he had to take to relieve himself, (2) the possibility that he could have an accidental discharge, and (3) the precautions he was required to take in that regard. Therefore, we conclude that the trial court did not abuse its discretion by denying the Health Center's motion for a mistrial.

### C. The Health Center's Claim Regarding the Trial Court's Evidentiary Ruling

The Health Center also argues that the trial court abused its discretion by admitting evidence regarding its standard of care—namely, that the court improperly admitted evidence in the form of medical literature appended to its policies and procedures, which stated that giving an enema following a prostatectomy was contraindicated. In particular, the Health Center contends that although it had conceded it breached its standard of care by administering the enema

to Lovell, the proximate cause of Lovell's fistula was his prostatectomy instead of the enema. Therefore, the Health Center asserts that its policy and procedures—specifically, the reference materials stating that an enema following a prostatectomy was contraindicated—were "wholly irrelevant and not probative of any issue" before the jury and "highly prejudicial." We disagree.

### 1. *The Standard of Review*

■ Generally, evidentiary rulings are within the sound discretion of the trial court and will not be reversed on review absent an abuse of discretion. *People v. Johnson*, 385 Ill. App. 3d 585, 596, 898 N.E.2d 658, 669 (2008). As we have previously stated, "[a] trial court abuses its discretion only where the ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Purcell*, 364 Ill. App. 3d 283, 293, 846 N.E.2d 203, 211 (2006).

### 2. *The Appended Medical Literature at Issue*

As contained in the Health Center's "Administrative Policy and Procedures," the stated purpose of the "Clinical Nursing Skills Reference and Resources" was to "establish and provide a standard reference for clinical nursing skill review and identify reference process." In particular, the policy statement mandated the use of a particular medical textbook pertaining to clinical skills and techniques, which the Health Center made available to its nursing units as a "quick reference book."

Under the pertinent section of the appended medical literature pertaining to a nurse's assessment of whether to administer an enema, the second step required the nurse to "[a]ssess medical record for presence of increased intracranial pressure, glaucoma, or recent rectal or prostate surgery." The corresponding rationale for this second step was listed as "[c]onditions contraindicate use of enemas."

### 3. *Lovell's Introduction of Evidence Appended to the Health Center's Policies and Procedures*

The record reveals that at opening statements, the Health Center told the jury the following:

"[The Health Center] admit[s] *** that [Lovell] is incontinent, but to say that an enema caused his fistula or to say that an enema caused his incontinence, *** that's where [the Health Center] get[s] off the train.

This case has been pending for a couple of years. This took place five years ago, and the preparation for this very day, for years, [Lovell has] had the opportunity to come into the courtroom and bring you some scientific evidence that says that's the case. [Lovell]

will be unable to do so. Not one medical journal article, not one textbook, not one internet site will ever say that in the history of the world, an enema caused a fistula. Because they don't. Surgery causes fistulas. We know this to be true. It's studied. It's recognized, published about. We have physical evidence to prove it. Enemas don't cause fistulas. Surgery causes fistulas."

In addition, the Health Center's medical expert in urology testified, in pertinent part, as follows:

"[THE HEALTH CENTER'S COUNSEL:] Let's talk about another theory. That the enema caused [the fistula]. \*\*\*
\*\*\*

[UROLOGY EXPERT:] I for one, in my individual experience, have never heard of that. I looked for several sources of literature to explain that direct cause and relationship issue and could not find it, and with everything else that I know about the case, \*\*\* I can't fathom \*\*\* that's how it occurred.

[THE HEALTH CENTER'S COUNSEL:] You say you've looked through the literature. Were you specifically looking for case reports similar to \*\*\* Lovell's?

[UROLOGY EXPERT:] Yes.

[THE HEALTH CENTER'S COUNSEL:] Enemas are given, what? Regularly in hospitals[?]

[UROLOGY EXPERT:] Correct.

[THE HEALTH CENTER'S COUNSEL:] Once in a while, as in this case, there might be somebody who gets an enema following a prostatectomy[?]

[UROLOGY EXPERT:] Correct.

[THE HEALTH CENTER'S COUNSEL:] Even without prostatectomies, have you ever seen a case before in any of the literature suggesting that an enema caused a fistula?

[UROLOGY EXPERT:] No."

■ In this case, the paramount issue before the court was causation—that is, whether the Health Center's administration of the enema caused Lovell's fistula. As previously stated, the Health Center conceded that it breached its standard of care by administering the enema but argues that the proximate cause of Lovell's fistula was his prostatectomy, instead of the enema. To that end, Lovell was not only entitled to present relevant and probative evidence to generally rebut the Health Center's defense but also to specifically rebut its urologist's expert testimony that (1) enemas do not cause fistulas and (2) enemas are occasionally given to patients following a prostatectomy.

Here, the Health Center's own policies and procedures mandated the use of a medical textbook as a nursing reference, which cautioned that the administration of an enema is contraindicated following a

prostatectomy. Thus, contrary to the Health Center's contention, such evidence was relevant and probative and the jury was free to reasonably infer why enemas are contraindicated in such circumstances. See *Cummings v. Jha*, 394 Ill. App. 3d 439, 454, 915 N.E.2d 908, 922 (2009) (a plaintiff need not present unequivocal evidence of causation but, instead, can meet his burden through the introduction of circumstantial evidence from which a jury may infer connected facts that reasonably follow according to common experience). Therefore, we reject the Health Center's contention that the trial court abused its discretion by admitting evidence regarding literature appended to its policies and procedures.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

POPE, J., concurs.

JUSTICE APPLETON, specially concurring:

I concur with the majority's decision but write separately to address both a specific argument made during oral arguments as well as to further comment on the problem created by Lovell's opening statement.

At oral argument, the Health Center's counsel encouraged this court to reverse based on our court's recent decision in *Downey v. Dunnington*, 384 Ill. App. 3d 350, 895 N.E.2d 271 (2008). The difficulty in resting the argument on that slender reed is that while the disposition criticized counsel's improper elicitation of irrelevant character evidence, we did not reverse the verdict in favor of the defendant on appeal.

I agree with the majority that Lovell's counsel here abused the opportunity for opening statement. Had counsel made this argument in a law school class in trial advocacy, he would have received a failing grade. That defense counsel made a *tactical* decision to neither object to the improper argument nor move for a mistrial during Lovell's opening statement does not excuse the requirement to do so if the error is to be preserved for review.