**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190344-U

Order filed October 21, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0344 Circuit No. 10-CF-205 |
| DANIEL K. CLEARY, | ) ) ) | Honorable Michael D. Risinger, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court.
Justices O'Brien and Schmidt concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Defendant failed to make a substantial showing of ineffective assistance of appellate counsel, and (2) the record shows that defendant made a knowing and voluntary waiver of his right to postconviction counsel.

¶ 2    Defendant, Daniel K. Cleary, appeals from the third-stage dismissal of his postconviction petition. Defendant argues that: (1) he received ineffective assistance of appellate counsel who failed to raise an issue concerning the Tazewell County circuit court's denial of defendant's motion for a mistrial, and (2) the court deprived defendant of his right to counsel during the third-stage postconviction proceedings. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         At the outset, we note that we have previously described the facts of defendant's trial in

his prior appeal. *People v. Cleary*, 2013 IL App (3d) 110610. The facts in this case are limited to

those necessary to decide the two postconviction issues presented.

¶ 5         The State charged defendant with five counts of first degree murder (720 ILCS 5/9-

1(a)(1), (a)(2) (West 2010)). The charges alleged that defendant killed his wife, MeLisa Cleary,

on June 6, 2008. On February 28, 2011, the matter proceeded to a jury trial.

¶ 6                                          A. Trial

¶ 7                                      1. Brandy Gerard

¶ 8         On June 6, 2008, at approximately 1 p.m., Brandy Gerard, MeLisa's sister, spoke with

MeLisa on the phone. MeLisa made arrangements to leave her house and meet Gerard at 5:30

p.m. Gerard never saw or heard from MeLisa again. Gerard reported MeLisa missing.

¶ 9                                  2. Deputy Chris McKinney

¶ 10        Chris McKinney, a deputy with the Tazewell County Sheriff's Department, was

dispatched to defendant's residence at 10:40 a.m. on June 7, 2008, following a report that

MeLisa was missing. After speaking with several of MeLisa's family members, defendant gave

McKinney permission to walk through the residence. While walking through the residence,

McKinney looked in the garage and saw defendant scrubbing the floor. Over the course of 30

minutes, McKinney continued to periodically observe defendant scrubbing the garage floor. The

spot defendant was scrubbing grew from baseball size to basketball size. Defendant told

McKinney that he was cleaning oil that had spilled while changing the oil in MeLisa's vehicle.

¶ 11                                3. J.C.

¶ 12       J.C., MeLisa and defendant's son, was nine years old at the time of MeLisa's death. On June 7, 2008, J.C. woke at 6 a.m. and found defendant doing laundry. Defendant told J.C. not to go into the garage. Later, J.C. disregarded defendant's direction and opened the door to the garage. J.C. saw defendant scrubbing the floor with a rag and bleach.

¶ 13                              4. Jean Cahoon

¶ 14       Jean Cahoon, MeLisa's mother, went to defendant's residence on June 7, 2008, after learning that MeLisa was missing. Between 2:30 p.m. and 3 p.m., Cahoon observed defendant scrubbing the garage floor with a red rag and a spray bottle. Cahoon identified People's exhibit No. 21, a photograph of the Oil Eater spray bottle and rag. Defendant told Cahoon that he had spilled oil. Cahoon did not observe spilled oil. Cahoon left to inform an officer that she observed defendant cleaning. When she returned approximately 10 minutes later, defendant was still scrubbing the floor.

¶ 15                              5. Michael Vien

¶ 16       Matthew Vien, a crime scene investigator, reported to defendant's residence on June 7, 2008, at approximately 7 p.m. On top of the dryer, Vien observed damp shoes, laundry detergent, and a bottle of bleach.

¶ 17                              6. Michael Oyer

¶ 18       On June 9, 2008, at approximately 7:30 p.m., Illinois State Police Sergeant Michael Oyer reported to defendant's residence to conduct a crime scene investigation. While processing the scene, Oyer took photographs inside the residence and garage. Oyer identified People's exhibit No. 42, a photograph showing a red rag on the floor and a bottle of Oil Eater. Oyer explained "Oil Eater is a solvent that is sold primarily for cleaning grease, degreasing, cleaning up things.

3

It claims to be a cleanser for many, many different types of stains. One of the things it claims for is also blood." Following Oyer's explanation, the following colloquy occurred.

"[THE STATE]: Claims for blood in what way, sir?

[OYER]: If you visit their web site and you read some of their documentation, is that it's very good at cleaning bloodstains up."

Defense counsel objected to Oyer's testimony as impermissible hearsay. The court overruled the objection, and the State continued its examination.

"[THE STATE]: *** What did it indicate to you when you read that web site for—is this the manufacturer of this chemical?

[OYER]: This is the manufacturer of the chemical that has the web site, yes, sir.

[THE STATE]: And what did it say with regards to blood?

[OYER]: That it's very good at cleaning up blood and removing the stains and getting rid of any evidence of those stains."

¶ 19     The following day, prior to resuming the trial, the court stated,

"I do want to take a second to revisit one of my rulings from yesterday. When Michael Oyer was on the stand, and I've asked our court reporter *** to look up the portion of the transcript in question beginning with when Mr. Oyer was talking about looking on the Internet regarding the spray bottle ***.

***

*** I'm willing for input from counsel, but on second thought, it appears to me it's clearly hearsay. I think what I was thinking at one point, that if it was

4

on the bottle, my ruling might have been correct that he could testify as to what he saw that wasn't true, but if the State wants to argue the point with me."

¶ 20 Defense counsel moved for a mistrial and argued that the inadmissible hearsay evidence could not be cured by the court's instruction. The court denied defendant's motion for a mistrial and instructed the jury,

"I want to revisit some testimony that you heard yesterday and a ruling that I made.

You probably will recall that Michael Oyer from the Illinois State Police was here and testified at some length yesterday on various subjects. In particular, there was reference made to a spray can in the garage. The spray can was referred to as Oil Eater, and during the testimony, Mr. Oyer made reference to a web site, and that if you get on the web site of the manufacturer, the web site will tell you certain things about the product, including the fact that it might be good for cleaning blood.

I ruled at the time that that evidence was admissible, that he could say what he saw, but it doesn't mean that it was true. I'm reversing myself on that. I've thought about it, and any reference that Mr. Oyer made to the web site or any information that he may have gained from looking at that web site is hearsay and is not admissible, and I'd like you to disregard that and strike that from your notes and try to disregard that in consideration of the case.

I will say, Mr. Oyer will be back here Monday. Whether this area will be revisited at that time or not, I don't know, and he testified on a lot of other subjects, and my ruling is just specific to any reference after he talked about the

5

web site. If he said something before that regarding the product, that's admissible, but as soon as he made reference to the web site and what it says if you look on their web site, that's inadmissible, should not be considered by you."

¶ 21 In the State's closing and rebuttal argument, the prosecutor referenced the testimony of several witnesses who saw defendant scrubbing the garage floor following MeLisa's disappearance. The State did not comment on the testimony regarding defendant's use of Oil Eater or the stricken testimony regarding the uses of Oil Eater.

¶ 22 Following deliberations, the jury found defendant guilty.

¶ 23 On April 6, 2011, defendant filed a motion for a new trial that argued, *inter alia*, that the court erred by denying defendant's motion for a mistrial. The court denied defendant's motion. The court sentenced defendant to 60 years' imprisonment.

¶ 24 On appeal, we affirmed defendant's convictions and sentence. *Cleary*, 2013 IL App (3d) 110610, ¶ 69.

¶ 25                        B. Postconviction Proceedings

¶ 26 On February 20, 2015, defendant filed a postconviction petition alleging, *inter alia*, that his due process rights were violated when the State presented hearsay testimony regarding the uses of Oil Eater. Defendant further alleged that appellate counsel was ineffective for failing to raise this claim. The circuit court advanced defendant's petition to the second stage and appointed counsel.

¶ 27 On April 24, 2017, the State filed a motion to dismiss defendant's postconviction petition.

¶ 28 On June 13, 2017, counsel filed a supplemental petition, which alleged that appellate counsel was ineffective for failing to claim that the circuit court erred in denying defendant's motion for a mistrial due to Oyer's hearsay testimony regarding the Oil Eater website.

¶ 29 The court denied the State's motion to dismiss and advanced the petition to a third-stage evidentiary hearing regarding defendant's claims of ineffective assistance of appellate counsel for failing to raise the denial of his motion for a mistrial and failing to raise the court's hearsay ruling.

¶ 30 On November 8, 2017, before the evidentiary hearing, defendant filed a motion to proceed as a self-represented litigant. Defendant claimed that due to counsel's unfulfilled promises, he had no other course of action but to proceed as a self-represented litigant. On November 30, 2017, following a hearing, the court granted defendant's motion to represent himself.[1]

¶ 31 On April 17, 2018, the State requested the court to reconfirm with defendant that he wanted to represent himself and "that he understands he has the right to assistance but is choosing not to avail himself of that right." Before the court could question defendant, defendant stated, "I understand, [Y]our Honor." Without further questioning, the court permitted defendant to proceed as a self-represented litigant. The State indicated that on November 30, 2017, the court granted defendant's motion to represent himself "[a]fter much questioning and hearings."

¶ 32 On August 16, 2018, defendant filed a motion requesting leave to file a supplemental postconviction petition. On the same day, defendant filed a "Supplemental Petition for Post-Conviction Relief" which presented a new claim of ineffective assistance of appellate counsel

---

[1]The record lacks a report of proceedings for the November 30, 2017, hearing. However, an order entered by the court shows that, following full advisement, the court permitted defendant to proceed as a self-represented litigant and discharged the public defender.

resulting from counsel's alleged failure to raise a sufficiency of the evidence argument related to the scientific evidence.

¶ 33        On September 19, 2018, defendant filed a second motion requesting leave to file a supplemental postconviction petition. On the same day, defendant filed a second "Supplemental Petition for Post-Conviction Relief," alleging a new claim regarding appellate counsel's ineffective assistance for failing to raise a sufficiency of the evidence argument related to impeachment by omission in several witnesses' testimony. The court granted defendant leave to file both supplemental claims.

¶ 34        On December 20, 2018, the matter proceeded to an evidentiary hearing. Defendant introduced documents produced by the Illinois State Police, including phone records, crime scene investigation reports, and excerpts from defendant's direct appeal brief. The court made a directed finding for the State and denied defendant's petition. Defendant appeals.

¶ 35                                II. ANALYSIS

¶ 36                    A. Ineffective Assistance of Appellate Counsel

¶ 37        Defendant argues that the circuit court erred by denying defendant's postconviction allegations of ineffective assistance of appellate counsel. Specifically, defendant contends that appellate counsel was ineffective for failing to allege that the court abused its discretion by denying trial counsel's motion for a mistrial due to improperly admitted hearsay statements.

¶ 38        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) provides a three-stage process for a criminal defendant to challenge his conviction based on an allegation that his constitutional rights were violated. *People v. Cotto*, 2016 IL 119006, ¶ 26. At a third-stage evidentiary hearing, "the burden is on the defendant to make a substantial showing of a deprivation of constitutional rights and the circuit court's decision will not be disturbed unless it

8

is manifestly erroneous." *People v. Coleman*, 206 Ill. 2d 261, 277 (2002). "Manifest error is that which is 'clearly evident, plain, and indisputable.' " *People v. Johnson*, 206 Ill. 2d 348, 360 (2002) (quoting *People v. Ruiz*, 177 Ill. 2d 368, 384-85 (1997)).

¶ 39   To prevail on a postconviction claim of ineffective assistance of appellate counsel, defendant must make a substantial showing that "appellate counsel's performance fell below an objective standard of reasonableness and that this substandard performance caused prejudice, *i.e.*, there is a reasonable probability that, but for appellate counsel's errors, the appeal would have been successful." *People v. Golden*, 229 Ill. 2d 277, 283 (2008). "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *People v. Easley*, 192 Ill. 2d 307, 329 (2000). "Thus, if the underlying issue is not meritorious, defendant has suffered no prejudice from counsel's failure to raise that issue on appeal." *People v. Peeples*, 205 Ill. 2d 480, 514 (2002).

¶ 40   The decision to declare a mistrial lies within the sound discretion of the circuit court. *People v. Foster*, 394 Ill. App. 3d 163, 166 (2009). A mistrial should only be declared if "there is some occurrence at trial of such a character and magnitude that the party seeking a mistrial is deprived of a fair trial." *Id.* We review the trial court's underlying decision for an abuse of discretion. *People v. Walker*, 386 Ill. App. 3d 1025, 1030 (2008). "A decision is an abuse of discretion only if it is illogical, arbitrary, or contrary to the law." *People v. Appelt*, 2013 IL App (4th) 120394, ¶ 86.

¶ 41   In the present case, the circuit court ultimately sustained defense counsel's hearsay objection and instructed the jury to disregard the Oil Eater evidence as it related to the testimony from the manufacturer's website. This instruction mitigated any prejudicial effect of the hearsay

9

testimony. See *People v. Biggs*, 294 Ill. App. 3d 1046, 1051 (1998) (generally, any prejudicial effect caused by the admission of improper evidence is sufficiently cured by the court's instruction that the jury disregard the problematic evidence). Despite the court's limiting instruction, defendant believed the prejudicial impact of the hearsay evidence necessitated the declaration of a mistrial. The record is devoid of any indication that the jury failed to follow this instruction, and defendant has not argued that the jury failed to follow the court's instruction and disregard the hearsay testimony regarding Oil Eater. See *People v. Scott*, 401 Ill. App. 3d 585, 601 (2010) ("[W]e presume that jurors consider only relevant evidence and follow the instructions given them."). Thus, any prejudicial impact caused by the erroneous admission of the Oil Eater hearsay testimony was eliminated by the jury instruction.

¶ 42    In reaching this conclusion, we reject defendant's claim that after the court instructed the jury to disregard the hearsay evidence, the State structured its case in a way that repeatedly drew the jury's attention to the stricken evidence. Contrary to defendant's assertion, the State's argument that defendant cleaned the garage floor made no mention of the use of Oil Eater. Rather, the State based its argument on the properly admitted testimony from several witnesses who observed defendant cleaning the garage floor after MeLisa's disappearance. Therefore, the remaining evidence and argument the State presented did not repeat or draw unnecessary attention to the improper Oil Eater testimony.

¶ 43    We conclude that the court did not err by denying defendant's claim of ineffective assistance of appellate counsel, as appellate counsel is not ineffective for failing to raise a meritless claim. See *Easley*, 192 Ill. 2d at 329.

¶ 44                                  B. Right to Counsel in Postconviction Proceeding

¶ 45          Defendant argues that the court violated his right to postconviction counsel where, "given the lack of a transcript, the record does not demonstrate that [defendant] made a knowing and voluntary waiver of his right to counsel."

¶ 46          In postconviction proceedings, there is no constitutional right to counsel. *Cotto*, 2016 IL 119006, ¶ 29. However, at the second stage of postconviction proceedings, the Act permits the court to appoint counsel for an indigent defendant. 725 ILCS 5/122-4 (West 2014). Defendant may waive his right to appointed counsel in a postconviction proceeding so long as the waiver is voluntarily, knowingly, and intelligently made. *People v. Lesley*, 2018 IL 122100, ¶ 34. A reviewing court must look at the particular facts and circumstances of each case to determine whether a knowing and voluntary waiver has been made. *Id.* ¶ 51. We review *de novo* whether defendant was deprived his right to postconviction counsel. *Id.* ¶ 30.

¶ 47          Our review in the present case is hindered by the absence of the report of proceedings for the November 30, 2017, hearing where defendant requested to proceed as a self-represented litigant. The "appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Therefore, we must construe any omission in the record against defendant. *Id.* at 392.

¶ 48          Nonetheless, the record we have on appeal indicates that defendant made a voluntary, knowing, and intelligent waiver of his right to counsel. The court order from November 30, 2017, showed that defendant independently sought to represent himself. On April 17, 2018, the court order was confirmed by the State's recollection that the court conducted "much questioning and hearings" with defendant before it discharged the public defender. Moreover, on the same date defendant acknowledged that he had the right to counsel and reaffirmed his waiver of that

11

right and choice to proceed to the evidentiary hearing as a self-represented litigant. Therefore, defendant made a knowing and voluntary waiver of his right to postconviction counsel.

¶ 49                              III. CONCLUSION

¶ 50        The judgment of the circuit court of Tazewell County is affirmed.

¶ 51        Affirmed.